Josefh S. Mattina, • J.
This is a motion by Stewart Dan, an employee of WGR-TV, a Buffalo television station, to quash and vacate the certain subpoena served on him by the Attorney-General’s office requiring his testimony as to the events he observed at the Attica Correctional Facility between September 9, 1971 through September 13, 1971. . Mr. Dan was sent by his TV station as a broadcast journalist to cover this disorder at the Attica Correctional Facility.
Mr. Dan argues that since he was at Attica as a full-time news gatherer, any material learned in the course of his employment was in his capacity as a news gatherer and not as an arm of the government.
Mr. Dan previously brought a motion to quash a Grand Jury subpoena in this case, which was denied by Justice Carman F. Ball on September 14, 1972. The order of denial was appealed to the Appellate Division (People v. Dan, 41 A D 2d 687, 688) which affirmed and modified the order “ by adding thereto a provision that appellants are privileged to refuse to divulge the identity of any informant who supplied them with information but that they are required, nevertheless, to testify about events which they observed personally including the identity of the persons whom they observed.” The Court of Appeals dismissed petitioner’s appeal (32 N Y 2d 764) and denied leave to appeal (32 N Y 2d 613) and petitioner’s motion for a further stay (32 N Y 2d 967) upon the grounds that there was no substantial constitutional question presented. Stewart Dan through his attorney has indicated to this court that on June 28, 1973 an application for a stay of further proceedings pending a formal application for a writ of certorari was denied by United States Supreme Court Justice Thurgood Marshall and that subsequent to this denial no further applications for certiorari were filed.
This case raises two issues. The first is whether section 79-h of the Civil Rights Law guarantees professional journalists and news gatherers employed by a TV station absolute immunity from the compulsion to testify as to criminal matters they observed or photographed.
The legislative intent of section 79-h of the Civil Rights Law creating the privilege is quoting from the memorandum of the original proponent Assemblyman Emeel S. Betros (N. Y. Legis. *401 Ann., 1970, p. 33): “ protecting persons and news media from being called by investigative bodies or individuals and being forced to reveal the sources of their information on material which they have broadcast or published * * * The recent practices of the Justice Department have brought to everyone’s attention the fact that the news media could be subjected to unwarranted ‘ fishing ’ expeditions wherein investigators for these bodies could hope to learn from reporters, their notes, their research and conversations, facts and other material which could be later used in criminal prosecutions.” (Emphasis added.)
The situation here is that Stewart Dan went to Attica to cover a news event at the request of the prison officials. During his stay the People claim that he allegedly witnessed various serious criminal acts committed by the defendants in-these indictments.
The test for determining whether or not the information obtained by the news gatherer is protected under section 79-h of the Civil Eights Law was enunciated in Matter of Wolf v. People (69 Misc 2d 256, 261, affd. 39 A D 2d 864): “ Thus, in order to raise successfully the claim of privilege, two essential elements must be established: first, the information or its sources must be imparted to the reporter under a cloak of confidentiality, i.e., upon an understanding, express or implied, that the information or its sources will not be disclosed; ” and further ‘ ‘ The burden rests upon the petitioners to demonstrate that the material is privileged ” (39 A D 2d 864).
Applying this test to Stewart Dan’s testimony, this court finds no proof offered that the testimony sought of this witness involves a confidential communication or -confidential source protected by this statute. None of the information was given to him by a person requesting that his name not be disclosed. The testimony -before the Grand Jury is about evidence he observed, not events related by an informer or others under a cloak of confidentiality. This was not a situation where people were interviewed at the -scene about an event which had already occurred.
Privileged communications have the element of confidentiality between the person holding the privilege and the person to whom the communication is made, which can be waived.
In People v. Wolf (39 A D 2d 864, supra) the court, interpreting section 79-h of the Civil Eights Law, held: “ The statute therefore, cannot be used as a shield to protect that which has already been exposed to view.”
Assuming arguendo that a privilege did exist, it was waived when Mr. Dan: (1) gave a statement about these events to *402 Special Assistant Attorney-General Anthony G. Simonetti; (2) gave a statement about these events to the McKay Commission which was published in Bantam Books, Inc. under the title “ Attica: The Official Report of the New York State Special Commission on Attica ” wherein it states at page 285:
“ Stewart Dan, a television reporter for WGR-TV in Buffalo, had been admitted to D yard on Friday afternoon to cover the negotiations. As 'he was sitting at the negotiating table, Schwartz and Hess approached him and began talking about the conditions in the prison and describing to him the taking of the facility on Thursday. According to Dan, none of the information they gave him was particularly .significant — he had received similar information from other inmates. However, out of habit, Dan was taking notes. Dan maintained that Schwartz and Hess did not hand him any notes or other papers, although many inmates said in interviews that Schwartz and Hess had passed notes to a television reporter, identifying participants in the uprising.
“ The conversation among Dan, Schwartz, and Hess was interrupted by inmates from the negotiating table. Schwartz and Hess were brought before the table and Stewart Dan was asked to turn over his notes, which he did. Shouts of ‘ Treason ’ and ‘ Guilty ’ could be heard by bystanders, including Dan. Schwartz and Hess related accurately the substance of their conversation with Dan, but after a few minutes, they were stripped by inmate security guards and led out of the yard to D block.
“ Dan inquired about them at the Negotiating table and was told that they had been placed in isolation in D block because they had tried publicly to disassociate themselves from the mass of inmates in the yard. Dan was-assured that nothing would happen to them a!nd he did not even Consider the incident important enough to include in his news report.” (emphasis added); and (3) answered questions before the Grand Jury which were based on conversations in D yard at the Attica Correctional Facility which took place either in the presence or within hearing distance of others. In all these instances there was a publication which would exclude them from the exemption of section 79-h of the Civil Rights Law.
Turning to the question of materiality of the information sought, it is clear that this was not a fishing expedition or a general exploratory investigation. The Attorney-General in his affidavit in opposition to the motion has indicated to this court that the reporter has information that is necessary and *403 vital to the prosecution of this case. A review of the Grand Jury minutes verifies this contention. The prosecutor has met his burden of showing the necessity of Mr. Dan’s statements in order to proceed with this trial of which the Wade hearing is an integral part [388 U. S. 218].
The case of People v. Dillon (Indictment No. 70-4, Ontario County, June 23,1971, Marshall, J.), relied upon by the defense, can be distinguished from this case in that: (1) it did not involve personal observations by the reporter of alleged serious crimes and (2) there was no publication. In any event, People v. Dillon (supra), has been overruled at least by the dicta of Branzburg v. Hayes (408 U. S. 665), cited later in this memorandum which refers to Grand Jury or trial throughout the opinion. Finally, on this issue, the Appellate Division, in denying Mr. Dan’s motion to quash the Grand Jury subpoena, stated in People v. Dan (41 A D 2d 687, 688), that: “ The questions which they refused to 'answer did not require them to disclose news or the sources of their news # * * In our opinion the provisions of section 79-h of the Civil Eights Law afford appellants the privilege of refusing to divulge the identity of any informant who has supplied them with information but the statute does not permit them to refuse to testify about 'events which they observed personally, including ‘1 the identities of the persons whom they had observed.’’ (Emphasis supplied; further appealed to the Court of Appeals who dismissed petitioner’s appeal [32 N Y 2d 764] and denied leave to appeal [32 N Y 2d 613] and petitioner’s motion for a further stay [32 N Y 2d 967].)
Certainly it would be an exercise in futility to require a newsman to testify before a Grand Jury and not be able to require his testimony at the trial of indictments based on his Grand Jury testimony.
Therefore, this court concludes that since the information (personal observations of Stewart Dan of alleged crimes): (1) is material to the prosecution of this case; and (2) was not obtained as a result of a confidential communication from a confidential source; and (3) was published, section 79-h of the Civil Eights Law does not apply in this case.
The second issue is whether the forced disclosure would violate the freedom of press guarantees of the First Amendment to the United States Constitution and section 8 of article I of the New York State Constitution. One of the most sacred rights which our democracy enjoys is the First Amendment. Our form of government continues to exist for many reaso'ns, two of the *404 most important being freedom of speech and freedom of press guaranteed by the United States and New York State Go\nstitution. These fundamental rights cannot be altered lightly. Any case involving them must be carefully scrutinized lest U impair not only the right of free speech and free press but als/o our whole democratic philosophy. Whenever a question involving this sacred right is brought 'before the courts, there must be an intense weighing of all the different factors involved. W<e are dealing here with a ¡balancing of interests between the public interest, in the fair and effective administration of justice and the First Amendment guarantee which provides the press with the right of mass circulation of newspapers and electronic media so as to disseminate ideas and information to the general public. More specifically, this issue must be decided by striking a proper balance between freedom of the press and the obligation of all witnesses to give relevant testimony with respect to criminal conduct witnessed by them. In Branzburg v. Hayes (408 U. S. 665, 686, supra), the court held: “ courts have applied the presumption against the existence of an asserted testimonial privilege, United States v. Bryan, 339 U. S. 323, 331 (1950), and have concluded that the First Amendment interest asserted by the newsman was outweighed by the general obligation of a citizen to appear bef ore a grand jury or at trial ”. (Emphasis added.) A criminal trial includes a Wade hearing which is an essential part of that trial.
In People v. Dan (41 A D 2d 687, 688, supra) the court cohcluded: “We find no merit in appellants’ further contention that the provisions of the First Amendment to the United States Constitution and section 8 of article I of the New York State Constitution exempt them from testifying before the grand jury. ‘ The Constitution does not, as it never has, exempt the newsmen from performing the citizen’s normal duty of appearing and furnishing information relevant to the Grand Jury’s task. ’ (Branzburg v. Hayes, 408 U. S. 665, 691, supra.) We conclude that no constitutional provision exempts appellants from testifying before the Grand Jury and, while they are not required to divulge the identity of an informant who has supplied them with information, they are required to testify about events that they observed personally including the identity of the person whom they observed.”
The Bransburg decision and the decision in People v. Dan, which relied on the Bransburg decision, clearly indicate, as this court has previously alluded to earlier in this opinion, that appellate courts were cognizant that in forcing a newspaper *405 man to testify before a Grand Jury, it could and would eventually involve Mm in testifying on those matters at a Wade hearing, an essential part of the criminal trial and subsequently at the trial itself, since his testimony served as part of the basis of the indictments themselves. It follows logically that if Mr. Dan is precluded from testifying at the Wade hearing and trial that the validity of the indictments would be in question. There would be no sense in indicting a person on certain testimony if you cannot use this testimony at a Wade hearing and a subsequent trial. That situation would be unfair not only to the People but also to the persons who were indicted in part as a result of such testimony.
On the record before this court, there is sufficient basis for holding that the public interest in law enforcement is significant enough to override any burden on news gathering that might result from insisting that reporters like other citizens testify as to their observations of a crime committed in their presence. The Constitution does not exempt newsmen from performing the citizen’s normal duty of appearing and testifying as a witness to crime. This decision itself in no way restrains what newspapers may publish or the type or quantity of information reporters may seek to acquire.
This court concludes that: (a) as previously stated, section 79-h does not apply since the published information (personal observations of Stewart Dan of alleged crimes) whigh are material to the prosecution of this case, were not obtained as a result of a confidential communication from a confidential source; and (b) the First Amendment interest asserted by Stewart Dan is outweighed by the general obligation of a citizen to appear and testify at a Wade hearing [388 U. S. 218] and subsequent trial and give what information he possesses based on his own personal observations of crimes committed in Ms presence, as enunciated in People v. Dan (41 A D 2d 687, supra, app. dsmd. 32 N Y 2d 764, mot. for lv. to app. den. 32 N Y 2d 613, mot. for stay den. 32 NY 2d 967).
Motion to quash and vacate the subpoena is denied and Stewart Dan is directed on the basis of Ms Grand Jury testimony to answer any and all questions which concern alleged criminal conduct of the defendants in this case which was actually observed by him and the identity of the persons whom he observed.