OPINION OF THE COURT
John Copertino, J.
Robert Wallace and David Breskin, the managing editor and a reporter, respectively, of Rolling Stone Magazine move to quash three subpoenas duces tecum served upon them by the defendant in this action. These subpoenas seek disclosure of notes, tapes and records made by the reporter in connection with an article published in this magazine on November 22, 1984, entitled “Kids in the Dark.”
Defendant, James Troiano, was indicted for the murder of Gary Lauwers, who was beaten and stabbed to death on or about June 17, 1984. Mr. Breskin as the reporter investigating the incident interviewed many teen-agers in preparation of the article, including friends and classmates of the defendant and the victim. The defendant’s attorney asserts that the information sought in the three subpoenas is needed to conduct a “proper and effective cross-examination of prosecution witnesses,” and to, “enable the defendant to subpoena persons whose testimony would be vital to the defendant’s direct case.”
*739 For the purpose of discussion, this court will refer to the three subpoenas as subpoenas “A”, “B” and “C”. Subpoena “A” specifically seeks, “names and addresses of any and all persons interviewed in connection and in preparation for the article * * * who were not directly or indirectly identified in said article,” and “any and all audio recordings, notes or memorandum made in connection with * * * the above-referenced case.” Subpoena “B” requests the “names and addresses of those persons identified in the article * * * as ‘teen dust head’, ‘peace-nick girl,’ ‘softhearted girl,’ and ‘boy at wake’.” It also asks for “any and all audio recordings * * * and all notes and memorandum” made during the interviews with the four individuals. Finally, subpoena “C” requests the addresses of nine individuals whose true identities were published in the article as well as “any and all audio recordings * * * and all notes or memorandum” made during the interviews with the nine individuals.
The movants assert that the materials sought by the three subpoenas are privileged and protected under New York Civil Rights Law § 79-h, US Constitution 1st Amendment, and the NY Constitution. Mr. Breskin asserts that the interviews were obtained upon agreements of confidentiality. As to subpoena “A”, Mr. Breskin states that these interviews were “off the record,” meaning that, “I would use no part of the information in the Article but use it solely for my own background and understanding.” As to subpoena “B”, Mr. Breskin states that these interviews were “not for attribution,” meaning that “the information may be used without identifying the source of the information.” As to subpoena “C”, Mr. Breskin claims that these interviews were conducted, “on the strict and specific agreement that their interviews would only be used for Rolling Stone Magazine.” The reporter states: “Thus, as to these interviews, while I had permission of these people to use their names and the information they gave me in the article for Rolling Stone, I agreed that I would not use their names or the information for any other purpose and would not divulge it under any circumstances except as limited in the Article. Part of the commitment which I gave was that the unused portions of the interviews were to be kept strictly confidential”.
This court will examine two issues: (1) whether the information sought comes within the protection of the Shield Law; and (2) if the information is not protected by the Shield Law, is it protected by the Constitutions of the United States and the State of New York.
THE SHIELD LAW
The movants first contend that inasmuch as the material sought comes within the protection of Civil Rights Law § 79-h, *740 commonly referred to as the Shield Law, the subpoenas should be quashed.
The Shield Law provides that a news reporter shall not be held in contempt by any court for “refusing or failing to disclose any news or the source of any such news coming into his possession in the course of gathering or obtaining news for publication or to be published in a newspaper, magazine, or for broadcast by a radio or television transmission station or network * * * by which he is professionally employed or otherwise associated in a news gathering capacity” (Civil Rights Law § 79-h [b]).
To successfully raise a claim of privilege under the Shield Law, the information must be imparted to the reporter under a “cloak of confidentiality,” and the information or sources must be obtained in the course of gathering news for publication. (People v Wolf, 69 Misc 2d 256, affd 39 AD2d 864; People v Le Grand, 67 AD2d 446.) In the case under consideration, there is no dispute that Mr. Breskin obtained the information requested by the defendant in the course of preparing the article “Kids in the Dark.” The question that remains, therefore, is whether the information requested was imparted under a “cloak of confidentiality.”
As to subpoena “A”, this court finds that there was an agreement of confidentiality. Both the reporter and the parties interviewed agreed that neither the information nor the source would be identified in the article. The information sought by subpoena “A” was to be kept secret and used only by the reporter for “background and understanding. ”
As to subpoena “B”, this court also finds that there was an agreement of confidentiality. The individuals listed in subpoena “B” and Mr. Breskin had an agreement that the information could be divulged but that the identities of the sources would be kept secret. Pseudonyms such as “teen dust head” and “softhearted girl” were therefore used to keep the sources confidential.
As to subpoena “C”, however, this court finds there was no recognizable agreement of confidentiality. The identities of the individuals named in subpoena “C” and the information they imparted, or at least some of it, were published in the article. If all the information imparted was in fact published, then there is nothing to protect. “The statute * * * cannot be used as a shield to protect that which has already been exposed to view.” (People v Wolf, 39 AD2d 864, supra.) If all of what was imparted was not published, then it should be noted that it cannot be ascertained *741 that there was an agreement between the parties as to what would be published and what would be kept secret. It appears that it was in Mr. Breskin’s discretion to decide what would and would not be published. As such, the mutuality of understanding necessary for an agreement of confidentiality was lacking. (See, People v Korkala, 99 AD2d 161; Matter of Andrews v Andreoli, 92 Misc 2d 410.)
Because the information in subpoenas “A” and “B” was imparted under a “cloak of confidentiality” and because it was obtained in the course of news gathering, the materials sought under these two subpoenas are protected by the Shield Law. While the language that follows was made in the context of a reporter’s refusal before a Grand Jury to divulge the identity of his source, it emphasizes the attitude of our own Court of Appeals in this area: “[Protection from contempt for refusal to disclose a source is not merely a privilege granted to the press by the Legislature, but is essential to the type of freedom of expression traditionally expected in this State and should be recognized as a right guaranteed by the State Constitution.” (Matter of Beach v Shanley, 62 NY2d 241, 256 [Wachtler, J., concurring].) The court also notes that there has been no proof of a waiver of the privilege afforded by the Shield Law. (See, Matter of Andrews v Andreoli, 92 Misc 2d 410, supra.) The court finds with respect to the materials requested in subpoena “C” that because there was no recognizable agreement of confidentiality, the subpoenaed materials do not come within the protection of the statute.
Although the materials sought in subpoenas “A” and “B” are protected by the Shield Law, this court must still determine whether there is an overriding constitutional interest that would entitle the defendant to the information. In appropriate circumstances, a reporter’s privilege under the Shield Law may yield to the defendant’s 6th Amendment rights. (See, People v Iannaccone, 112 Misc 2d 1057; Matter of Farber, 78 NJ 259, 394 A2d 330, cert denied sub nom. New York Times Co. v New Jersey, 439 US 997.) The US Constitution 6th Amendment guarantees the right of every criminal defendant to be confronted with witnesses against him, including the right of cross-examination; and these rights must be accorded to a defendant in the State courts as well. (Douglas v Alabama, 380 US 415, 418.)
However, in order for a defendant to pierce the shield of protection given to a reporter, there must be some preliminary showing by the defendant of materiality and relevance, need, *742 and inability to obtain the information from another source. (See, Matter of Farber, 78 NJ 259, 394 A2d 330, cert denied sub nom. New York Times Co. v New Jersey, 439 US 997, supra.) Vague assertions that the material requested is needed for discovery or impeachment are not sufficient to satisfy the threshold. While the following quote was made in different circumstances, it is nevertheless appropriate here: “Indeed, entitlement to access on no more than a bare allegation that the inspection is sought as fodder for an untracked attack on credibility would render the principle of confidentiality meaningless for all practical purposes.” (People v Gissendanner, 48 NY2d 543, 549-550.) This safeguard, of requiring the defendant to make some preliminary showing and the heavy burden of proof imposed upon the defendant in order for him to ultimately prevail on this issue, must be prescribed in deference to the strong legislative intent (see, 1970 McKinney’s Session Laws of NY, at 3112) and judicial approval of the protection of confidentiality. (See, Matter of Beach u Shanley, 62 NY2d 241, supra.) In the present case, as to the materials requested under subpoenas “A” and “B”, there has been no preliminary showing by the defendant. Accordingly, this court will not pierce the protection provided by the Shield Law, and subpoenas “A” and “B” are quashed.
CONSTITUTIONAL PROTECTION
As previously discussed, subpoena “C” is not protected under the Shield Law. Nevertheless, the movants claim that even if the material is not protected under the Shield Law, it is protected under the US Constitution 1st Amendment, as well as the Constitution of New York.
“The protections afforded under the First Amendment to the United States Constitution and section 8 of article I of the New York State Constitution provide an independent basis for quashing subpoenas.
“The right to a free and independent press, unburdened by prior restraint, is part of the bedrock of our society. The cases are legion that subpoenas issued to the press invoke First Amendment protections of the press to gather, write, edit, and disseminate news.” (People v Bova, 118 Misc 2d 14, 19-20.)
The existence of a qualified privilege has been frequently invoked by news reporters. (Silkwood v Kerr-McGee Corp., 563 F2d 433 [10th Cir 1977]; United States v Burke, 700 F2d 70 [2d Cir 1983].) “[Compelling disclosure of information obtained by a reporter in news gathering can have a ‘ “chilling effect” upon his functioning as a reporter and upon the flow of information to *743 the general public’ * * * And this is so even though the ‘source’ of the sought-after material is already known.” (People v Korkala, 99 AD2d 161, 166-167, supra.)
Juxtaposed to the free press considerations are the defendant’s rights under the US Constitution 6th Amendment. Defendant claims that the information sought by the subpoena is needed to assure a fair trial. Whenever a question involving constitutional rights is brought before the court, there must be an intense weighing of all the different factors involved. (Matter of Dan v Simonetti, 80 Misc 2d 399.) In balancing a constitutionally claimed privilege of nondisclosure against a defendant’s constitutional right to a fair trial and of the confrontation of witnesses, the courts have applied a “three-pronged test.” “ ‘[Disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.’” (United States v Burke, 700 F2d 70, 76-77 [2d Cir 1983], supra.) It should be noted that as to subpoenas “A” and “B”, the defendant’s 6th Amendment rights had to be weighed against the State Shield Law, while as to subpoena “C”, the defendant’s 6th Amendment rights must be weighed against the rights afforded under the 1st Amendment. The same “three-pronged test” is used.
In the present case, as to the information sought under subpoena “C”, defendant has also failed to satisfy the “three-pronged test.” Defendant has failed to demonstrate that the information subpoenaed is material and relevant on the one hand, and necessary on the other. As has been stated previously, no showing whatsoever is made as to materiality and relevancy. Defendant maintains that once confidentiality is negated, whatever a reporter divulges can be utilized by a defendant without any further showing. Nevertheless, the qualified privilege afforded under the 1st Amendment must be contended with and overcome by a showing of materiality and relevancy, as well as need. No explanation is made as to how, what the defendant seeks, is relevant and material. In Matter of Farber (78 NJ 259, 264, 394 A2d 330, 332, supra), the reporter’s investigation “contributed largely to the indictment and prosecution” and presumably much of what the reporter developed had to be relevant and material. Here, the article was written some months after the indictment was returned and the defendant makes no specific mention of how the information can aid his defense. In People v Bova (118 Misc 2d 14, supra), the defendant’s argument that the information “might shed light” on a particular aspect of the case was found insufficient. Here, no *744 such contention is made, only that the information might be used for “effective cross-examination,” and “to subpoena persons whose testimony would be vital to the defendant’s direct case,” and in the most conclusory terms at that. Inasmuch as the requirements of all three prongs need be met and the defendant has failed with respect to two of the prongs, it will not be necessary to determine whether the defendant has shown unavailability of other sources. Subpoena “C” must be quashed.
So far as it appears, defendant has made no showing that he comes under the benefits conferred by the 6th Amendment as opposed to the privileges conferred to a reporter under the Shield Law and the 1st Amendment. Accordingly, the motion made by Robert Wallace and David Breskin, to quash the three subpoenas is granted.