In the Matter of the Application of
CONSUMERS UNION OF UNITED
STATES, INC.

To quash subpoenas issued in aid of
an action entitled:

Dr. Chester A. WILK, D.C., et
al., Plaintiffs,

v.

AMERICAN MEDICAL ASSOCIATION
et al., Defendants.

No. M8–85.

United States District Court,
S. D. New York.

July 18, 1980.

George P. McAndrews, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for plaintiff Chester Wilk.

James A. Cherney, Hedlund, Hunter & Lynch, Chicago, Ill., for defendant American College of Radiology.

Michael Pollet, Karpatkin, Pollet & LeMoult, New York City, for movant Consumers Union.

### MEMORANDUM ORDER

LEVAL, District Judge.

On October 12, 1976, Chester Wilk filed an action in the Northern District of Illinois on behalf of himself and a class of similarly situated chiropractors against, *inter alia*, the American Medical Association and the American College of Radiology, alleging that the defendants conspired to defame chiropractors and restrain the spread of chiropractic, in violation of the Sherman Act, 15 U.S.C. § 1 (1978). In 1975 Consumers Union ("CU") published in Consumers Reports ("CR") a series of articles authorized by a CU reporter Joseph Botta. The arti-

cles were on the subject of chiropractic and came to a negative evaluation. Nearly four years after the filing of the lawsuit and five years after the publication of the articles, plaintiffs and defendants in *Wilk v. AMA* have decided, for different reasons, to seek discovery of CU and Joseph Botta on the 1975 articles. CU moves to quash the subpoenas on the ground that their enforcement would represent an unwarranted incursion into the freedom of the press and related values secured by the First Amendment.

For the reasons stated below, the motion to quash is granted in part and denied in part.

The defendants were first to seek such discovery by serving a subpoena *ad testificandum* on CU and Joseph Botta. Thereafter the plaintiffs served subpoenas *duces tecum* and *ad testificandum.* CU and Botta move to quash all the subpoenas, claiming that such discovery interferes unreasonably with the freedom of the press under the First Amendment.

Because the issues raised by these applications turn on the nature of the question to be asked, the relationship of such matters to the issues in dispute, the availability of such information from other sources and other variables which turn on the particular inquiry to be made, I requested the parties seeking discovery of CU to submit a detailed list of the subjects on which the discovery is sought, together with a description of its relevance and the reasons for the need.

The defendants seek to examine Mr. Botta on fifteen categories of issues, including, *inter alia*, his qualifications; the methodology he employed in researching the articles; the sources for his article (previously disclosed and undisclosed); the procedure by which he formed his conclusions; and, the number of reprints ordered of his article. The stated purpose of these inquiries is to develop a basis for introducing the CR articles at trial, through Mr. Botta, as evidence that an independent entity with no relationship to the alleged conspiracy studied chiropractic and published conclusions similar to the conclusions maintained by the defendants over the years of the alleged conspiracy. Apparently, the relevance of the CR articles to the defense lies in their claimed tendency to render more likely the possibility that the defendants could have maintained and publicized strongly negative views regarding chiropractic without harboring malice or anticompetitive intent towards the chiropractic profession.

The plaintiffs have listed 32 areas of inquiry regarding which they seek discovery from CU and Botta including, *inter alia*, materials transmitted by various named individual defendants to Botta; the substance of conversations held between Botta and the named individuals; materials submitted by unnamed, alleged co-conspirators to Botta; the extent of Botta's reliance on various materials or whatever was transmitted to him in the course of these conversations; Botta's methodology; as well as other matters raised by the defendants.

The plaintiffs contend that the articles are evidence of an allegation in their complaint that the defendants employed apparent independent entities as instruments of their conspiracy. The plaintiffs hope to prove that the unwitting CU was fed misinformation by the defendants who did so as part of their anti-competitive conspiracy to destroy chiropractic. The plaintiffs contend that they seek discovery from CU to obtain direct evidence of the conspiracy described in the complaint.

CU contends that it should be relieved of the burden of responding to both parties' subpoenas. It contends that the First Amendment interest in encouraging the press to address controversial subjects is threatened by this discovery and that the parties are abusing the subpoena power in attempting to compel CU to serve as an involuntary expert witness to a dispute between two groups of health care professionals, each of which has ample access to alternative sources of expert testimony; CU also contends that the parties have made insufficient showing of relevance or importance to overcome the First Amendment interest threatened by the subpoenas.

■ The Supreme Court instructs in *Branzburg v. Hayes*, 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1972), that resolution of the balance of interests implicated by subpoenas of non-party journalists should be approached on a case-by-case basis, with careful attention to the facts of each case.

■ Both *Branzburg v. Hayes, supra*, and the Second Circuit case of *Baker v. F & F Investment*, 470 F.2d 778, 785 (2d Cir. 1972), which addressed the issues raised in *Branzburg* in the context of civil discovery, require consideration of a range of factors before resolving in which direction the balance of interests tips. These factors include the nature of the suit in which discovery is being sought, *see Baker v. F & F Investment, supra*, 470 F.2d at 783, 785; *Citicorp v. Interbank Card Ass'n*, 478 F.Supp. 756, 4 Med.L.Rptr. 1429 (S.D.N.Y. 1978), the extent to which the information sought goes to the "heart of the claim" of the party seeking disclosure, *see Garland v. Torre*, 259 F.2d 545, 549 (2d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), whether the party seeking discovery had exhausted other sources for the information in question, *see Baker v. F & F Investment, supra; Application of Consumers Union*, 4 Med.L.Rptr. 2119 (S.D.N.Y. 1978), and, the impact of the requested discovery on First Amendment interests, *see, e. g., Branzburg v. Hayes, supra; Apicella v. McNeil Laboratories, Inc.*, 66 F.R.D. 78, 80 (E.D.N.Y.1975).

■ As a preliminary matter, I reject the defendants' contention that their subpoena implicates no interest cognizable under the First Amendment. The defendants claim that they do not now seek the names of undisclosed sources for Botta's article, and that therefore the balancing test required by *Branzburg* and *Baker* has no application.

Their contention that the discovery is outside of First Amendment concern because it does not seek to identify confidential sources is a total misconception of the scope of the free press interest. Regardless whether they seek confidential sources, they seek to examine the reportorial and editorial processes. The fact that their purpose is to support, rather than undermine, the bona fides of the conclusions expressed makes no difference. Such discovery would represent a substantial intrusion on fact gathering and editorial privacy which are significant aspects of a free press. *See In re Subpoena of Forbes Magazine*, 494 F.Supp. 780, M8–85, (S.D.N.Y.1980).

Furthermore, such discovery proceedings would seriously hamper CU's ability to function in its editorial role. *See Yiamouyiannis v. Consumers Union*, 619 F.2d 932 (2d Cir. 1980). CU contends convincingly that if it is susceptible to being drawn into private disputes between commercial or other institutional entities simply because CR has expressed an opinion favorable to the successful resolution of the dispute in favor of one side or the other, a significant burden will be placed on CU's coverage of provocative issues important to the public.[1] I agree, and I find that the defendants' subpoena implicates significant First Amendment interests notwithstanding that the defendants do not now seek discovery of previously undisclosed sources.

■ Additionally, I find that defendants' claimed need for the discovery in question is

---

1. The defendants claimed at argument that this case was unique in that they did not seek to profit from the nonparty journalist's research but instead simply seek to cite his published conclusions as evidence that an independent third-party could maintain the same positions that the defendants maintained over the course of their alleged conspiracy. *Compare In re Consumers Union*, 4 Med.L.Rptr. 2119 (S.D.N.Y.1978).

I disagree with the suggestion that the defendants' discovery request is unique. One can imagine many instances involving claims of unfair competition, commercial libel, or even private anti-trust actions where one party seeks to rely on a nonparty journalist's conclusions to prosecute or defend his claim. Without venturing an opinion on the proper disposition of a motion to quash in any such case, it seems clear at least that First Amendment interests could be implicated in each instance by subpoenas directed to nonparty journalists.

rather attenuated. To the extent that defendants seek to demonstrate that other experts agree with their conclusions there is no question they are able to secure the willing appearance of third-party expert witnesses. They do not need the author or publisher of this article. It is noteworthy that the defendants were acquainted with the CR articles for one year before and then more than three years after this suit was filed before they decided that Mr. Botta's published conclusions were important evidence of the good faith basis for the defendants' public position on chiropractic. There is no contention in the case that Mr. Botta or any other CU employee is competent to offer direct evidence of the defendants' alleged plan or intent to destroy chiropractic, except to the extent that CU received materials on chiropractic from the defendants which is not disputed. Botta's state of mind in receiving the materials furnished by the defendants is of no relevance.

Under the circumstances, I find that the balance of interests strongly favors minimizing the burden on CU of answering the defendants' subpoenas. My findings on the specific areas of inquiry proposed by the defendants are as follows:

(a) *Categories I–IV* (author's personal, educational, employment background; job responsibilities; awards received)

■ Through these inquiries, the defendants apparently seek to qualify Botta as an expert. I find that the defendants have shown no need for such proof. In any event, a good deal of personal data is supplied in Botta's affidavit. This part of the defendants' subpoena is ordered quashed.

(b) *Categories V, VI, XI, XIII* (decision-making process at CU; CU's interest in chiropractic; CU's independence)

■ These inquiries serve to qualify CU as a source of expert opinion and to inquire into the editorial and reportorial process.

This part of the subpoena is ordered quashed.

(c) *Categories VII, VIII, IX, X, XII* (information received from disclosed and unsources; "generic" types of undisclosed sources; source of errors)

■ These inquiries serve to establish the scientific basis for Botta's conclusions. For the same reasons that the categories of discovery discussed above represent an unwarranted burden on CU, this part of the subpoena is ordered quashed.[2]

(d) *Category XIV* (repercussions of CR articles)

■ This inquiry apparently serves the defendants' goal of proving the plaintiffs' sensitivity to criticism. While I am by no means convinced of the relevance of this subject to the merits of the lawsuit given that the defendants have not filed a counterclaim for malicious prosecution, this is a matter about which CU might be able to offer direct evidence, in the form of an "occurrence" witness. Moreover, the burden on First Amendment interests seems negligible. Under the circumstances, I decline to quash this part of the subpoena.

(e) *Category XV* (orders of reprints of articles)

■ This inquiry apparently is related to questions of causation and damages, *i. e.*, assuming without deciding that the defendants conspired to use CR as an instrument with which to visit harm upon the plaintiffs, what is the scope of the article's impact? While it may be premature to discover such matters before the predicates to antitrust liability have been established, I do not find the burden of responding to such a discovery request to represent an incursion on First Amendment interests substantial enough to warrant quashing this part of the subpoena.

---

**2.** I note as well that regardless of whether the defendants' subpoena is enforced, the defendants can still make use of the article at trial. The article is self-authenticating, and is non-hearsay evidence of the fact that CR took the same position as the defendants regarding chiropractic. It is only when the defendants attempt to prove the scientific basis for the position taken by CR, to offer CR as an expert on the subject of chiropractic, that the article becomes hearsay because it is offered for the truth of the positions asserted in the article.

588

■ The plaintiffs acknowledge that they seek to discover undisclosed sources and to explore the editorial processes at CR. They contend, however, that the serious First Amendment interests implicated by their subpoenas are outweighed in this case by the fact that the discovery they seek "goes to the heart" of the plaintiffs' claim. I disagree.

The plaintiffs do not seriously claim that Botta or CU were active and knowing participants in the defendants' conspiracy. Instead, they contend that Botta was duped by the defendants, who fed Botta material hostile to chiropractic including misinformation, with the purpose of using CR as an unwitting instrument of the anticompetitive conspiracy to destroy chiropractic.

Without relying on such discovery, the plaintiffs have ample evidence of communications between the defendants and Botta. More significantly, the plaintiffs have already discovered materials submitted to Botta by various named individual defendants as well as by unnamed alleged coconspirators.

The defendants do not deny that they supplied Botta with packets of materials adverse to chiropractic. Copies of them have been supplied to plaintiffs. Botta's acknowledgment is not needed to prove his receipt of such materials from the defendants. As noted above, Botta's state of mind is of no relevance; nor can he testify to the defendants' intentions in furnishing the materials.

On the other hand, such inquiry would represent a serious intrusion into the journalist's confidential sources as well as into editorial and thought processes. Under the circumstances, I do not find that the plaintiff's interest justifies the intrusion into First Amendment interests that such discovery would require.

The plaintiffs also seek to discredit the article's value as "expert" third-party opinion on chiropractic. The observations set forth in my ruling above on the defendants discovery requests are also applicable here.

Again, under the circumstances, I find that the balance of interests strongly favors minimizing the burden on CU of answering these subpoenas. My findings on the specific areas of inquiry are as follows:

(a) *Categories 1–19, 24, 30, 32* (materials submitted by and conference held with defendant/sources)

■ For the reasons stated above, these requests represent an unwarranted and unnecessary incursion into interests vital to the freedom of the press and these parts of the subpoenas are ordered quashed.

(b) *Categories 20–23, 27, 29* (Botta's methodology)

■ These inquiries are not necessary. Under the circumstances, these parts of the subpoenas are ordered quashed.

(c) *Categories 25, 26* (orders for reprints)

■ These demands do not represent a serious incursion into protected interests. I decline to quash this part of the subpoenas.

The motion to quash is granted in part and denied in part.