OPINION OF THE COURT
David B. Saxe, J.
In connection with this motion to quash subpoenas which attempt to elicit information concerning the background of a particular news report broadcast by CBS on its news program “60 Minutes”, important issues relating to the (1) applicability of the New York Shield Law (Civil Rights Law, § 79-h, subd [b]) and (2) privilege extended to professional journalists and the compelling interest of First Amendment rights in civil litigation must be examined.
The defendants attempt to compel the production of outtakes, notes and other nonbroadcast materials relating to a 60 Minutes news report entitled “Brown Lung” broadcast on February 4,1979. The defendants also seek to take the depositions of movant Harry Moses, the producer of 60 Minutes and Dan Rather who was the correspondent.
The plaintiff, Nat Wilkins, is a former cotton mill worker who alleges that he contracted byssinosis (brown lung *35 disease) as a result of the negligence and malfeasance of his former employer, defendant West Point Pepperell, and various individual defendants, including several company doctors.
The defendants say that they are entitled to discovery from CBS of unpublished information assembled by 60 Minutes in the preparation of this news report. I hold that the defendant’s contention is wrong.
First, courts have frequently noted the existence of a qualified privilege that may be invoked by journalists (Silkwood v Kerr-McGee Corp., 563 F2d 433, 436-438), who have been served with subpoenas directing them to disclose information acquired in the course of journalistic investigations. This privilege flows from the First Amendment’s guarantee that “Congress shall make no law * * * abridging the freedom of speech, or of the press”, and the recognition that compelling disclosure of information obtained by a reporter in news gathering will have “a ‘chilling effect’ upon his functioning as a reporter * * * [regarding] the flow of information to the general public in violation of the First and Fourteenth Amendments.” (Loadholtz v Fields, 389 F Supp 1299, 1300.)
In this case, the party requesting disclosure is not trying to uncover the identity of a confidential source. But, the existence of a reporter’s privilege under the First Amendment does not turn upon this fact. It is clear that the subpoenas in question seek to exploit certain professional journalists as unwilling investigators and seriously interfere with and undermine their ability to gather news. It thereby has a “chilling effect” upon the exercise of First Amendment rights. This court will not lend itself to such exploitation. (Mackay v Driscoll, 3 Media L Rptr 2582; see, also, United States v Cuthbertson, 630 F2d 139, cert den 449 US 1126.)
To determine whether a journalist may assert a privilege to avoid testifying in civil litigation, the courts have expressly employed a “balancing test” similar to that articulated by the Supreme Court in Branzburg v Hayes (408 US 665). At the same time, the absence, in civil litigation, of any State interest comparable to that involving criminal law enforcement at stake in Branzburg, has weighed heav *36 ily against those parties seeking to compel journalists to disclose information gathered in the course of journalistic investigations.
When a privilege, such as a reporter’s privilege, “is grounded in constitutional policy, a ‘demonstrated, specific need for evidence’ must be shown before it can be overcome.” (Riley v City of Chester, 612 F2d 708, 716, citing United States v Nixon, 418 US 683.) Hence in determining the applicability of a reporter’s privilege in a civil case, the courts have looked to the following factors: (1) the nature of the case at bar; (2) the relevance and materiality of the information sought to be adduced; (3) whether the information sought goes to the heart of, is crucial to, the claims made by the discovering party and the issues framed by the pleadings; and (4) the availability of the information from other sources. (Gulliver’s Periodicals v Levy Circulating Co., 455 F Supp 1197, 1202-1203; accord Silkwood v Kerr-McGee Corp., supra; Garland v Torre, 259 F2d 545.)
In conclusion, the defendants here must meet a heavy burden in seeking to compel the disclosure of unpublished information from nonparty journalists in this civil action. In the absence of a showing that the information sought is not only relevant, but crucial to their claims, and is unavailable from other sources, the instant subpoenas must be quashed. I hold that information sought is privileged.
Finally, assuming, arguendo, that the defendants could meet their burden to justify discovery under the First Amendment standards, their subpoenas would still have to be quashed because this enforcement would be contrary to the absolute newsperson’s privilege afforded by section 79-h of the New York Civil Rights Law. That statute provides that journalists may refuse to disclose “any news or the source of any such news” obtained in the course of their professional activities. (Civil Rights Law, § 79-h, subd [b]; emphasis added.) By its explicit reference to “any news,” the statute makes clear that its protection extends not only to confidential sources, but also to all unpublished information. Any doubt as to the scope of the privilege afforded by the New York Shield Law was resolved by an amendment to the statute passed in 1981. The principal change made by the amendment was the addition of language *37 explicitly stating that a journalist cannot be compelled to reveal unpublished information: “notwithstanding that the material or identity of a source of such material * * * gathered by a [news]person * * * is or is not highly relevant to a particular inquiry of government”. (Civil Rights Law, § 79-h, subd [b]; emphasis added.)
Thus, it is evident that the statute provides an absolute, not qualified, privilege for journalists against the disclosure of unpublished “material”, as well as “the identity of a source of such material”. (See, also, New York v Iannaccone, 112 Misc 2d 1057.)
The defendants have suggested that this is a case in which the Shield Law should “yield”. There is no basis for this contention. Even if the defendants had demonstrated a compelling need for the information they seek — which they have not — the New York Legislature has explicitly excluded relevance as a means of overcoming the protection of the statute.
The defendants also argue that the Shield Law does not apply to the materials requested by these subpoenas because they are not “news”. It is apparent that the physical examination of Wilkins — and movant Bather’s witnessing of it — took place with the specific purpose of preparing a 60 Minutes report concerning “matters of public concern or public interest or affecting the public welfare.” (Civil Rights Law, § 79-h, subd [a], par [8].) The intent of the Legislature in enacting the 1981 amendment to the Shield Law was clearly to provide broad and pervasive protection to all aspects of the process of news gathering and dissemination. That is how I construe it. The subpoenas are therefore quashed.