OPINION OF THE COURT
Hancock, Jr., J.
The question presented is whether nonconfidential photographs taken by journalists in the course of newsgathering activities and kept as resource material are protected from compelled disclosure by a qualified reporter’s privilege under the State or Federal Constitution.[1] The Appellate Division held that protection from disclosure was limited to situations involving "a confidential relationship with a source” and to those involving "private sources where discovery would substantially intrude upon the privacy of press functions” (122 AD2d, at 571). We disagree. Article I, § 8 of the New York State Constitution and, we believe, the First Amendment of the Federal Constitution as well, provide a reporter’s privilege which extends to confidential and nonconfidential materials and which, albeit qualified, is triggered where the material sought for disclosure — the photographs here — was prepared or collected in the course of newsgathering.
Our decision is based on an adequate and independent ground under our State Constitution. Nevertheless, we are noting our agreement with the Federal courts that have reached the same result under the Federal Constitution in order that we might express our own view of the federal guarantee of a free press which, of course, we are also bound to uphold. This practice is in accord with our proper role in helping to expound the Federal, as well as our State, Constitution and, as some of the commentators have explained, it contributes to the development of a body of case law of potential use to federal and other state courts (see, e.g., Utter, Swimming in the Jaws of the Crocodile: State Court Comment *525 on Federal Constitutional Issues when Disposing of Cases on State Constitutional Grounds, 63 Tex L Rev 1025, 1029-1030, 1050; Pollock, Adequate and Independent State Grounds as a Means of Balancing the Relationship Between State and Federal Courts, 63 Tex L Rev 977, 985-986; Developments in the Law — The Interpretation of State Constitutional Rights, 95 Harv L Rev 1324, 1357). We have followed the practice in other cases and see no reason for hesitancy in doing so here (see, e.g., Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 64-65; People v Stith, 69 NY2d 313, 316, n; People v Donovan, 13 NY2d 148, 151-152).
I
Plaintiff was injured when his automobile hit a concrete median after sliding off a roadway which was under construction. Seventeen photographs of the accident scene were taken by a police photographer. Additionally, a photojournalist employed by appellant, Gannett Rochester Newspapers (Gannett), took 58 photographs, one of which was published in the Democrat and Chronicle the following day.
Plaintiff brought an action for personal injury against the contractors and subcontractors responsible for the construction project, alleging hazardous conditions at the construction site and various safety violations. When his informal request to examine Gannett’s photographs was refused, plaintiff moved pursuant to CPLR 3120 (b) for an order directing Gannett, as a nonparty, to produce those photographs for inspection and copying. Gannett cross-moved for a protective order arguing that its unpublished photographs are privileged under the free press and speech guarantees of the Federal and State Constitutions.
Special Term granted the motion, denied the cross motion, and ordered that Gannett produce the photographs. On appeal, the Appellate Division agreed with the denial of Gannett’s cross motion on the ground that "there is no compelling reason for extending the scope of the [First Amendment reporter’s] privilege to nonconfidential materials” and because the "facts of this case do not warrant affording [Gannett] greater protection under the State Constitution” (122 AD2d, at 571). The court modified the order of Special Term, however, by reversing the grant of plaintiff’s discovery motion and remitting the matter for an in camera examination of the photographs and a routine discovery motion determination of *526 the "relevance of the information and an actual need for its production.” (See, CPLR 3101 [a]: "[t]here shall be full disclosure of all evidence material and necessary”.) On remand, Supreme Court determined that 19 of the Gannett photographs "depict relevant evidence not shown in the police photographs” and ordered their production.
Gannett, raising a substantial constitutional issue, brought this appeal as of right (CPLR 5601 [b]). For the following reasons, we reverse the order of the Appellate Division thus presented for our review.
II
In the ordinary case, the scope of discovery available against a nonparty is governed solely by the "sweeping exhortation” of CPLR 3101 which requires "full disclosure of all evidence material and necessary in the prosecution or defense of an action,” wherever "sufficient independent evidence” is not obtainable (Cirale v 80 Pine St. Corp., 35 NY2d 113, 116-117). The prerequisites of materiality and necessity, though placing some limit on entitlement to disclosure, extend to any information or items "bearing on the controversy” which will be an aid to trial preparation, sharpening of the issues, or reducing delay. The test in such cases is "usefulness and reason” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406). Where, however, the nonparty against whom discovery is sought is engaged in newsgathering or reporting activities, and the materials requested are photographs taken in the course of such endeavors, additional considerations are involved.
The ability of the press freely to collect and edit news, unhampered by repeated demands for its resource materials, requires more protection than that afforded by the disclosure statute (CPLR 3101). The autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes, were routinely permitted (see, Miller v Mecklenburg County, 602 F Supp 675, 679; Maurice v National Labor Relations Bd., 7 Med L Rptr 2221, 2223 [SD NY], vacated on other grounds 691 F2d 182; Wilkins v Kalla, 118 Misc 2d 34, 35). Moreover, because journalists typically gather information about accidents, crimes, and other matters of special interest that often give rise to litigation, attempts to obtain evidence by subjecting the press to discovery as a *527 nonparty would be widespread if not restricted on a routine basis. The practical burdens on time and resources, as well as the consequent diversion of journalistic effort and disruption of newsgathering activity, would be particularly inimical to the vigor of a free press.
For these reasons, the courts in New York and elsewhere, Federal and State, have recognized a reporter’s qualified privilege under the First Amendment guarantee of free press and speech (see, United States v Burke, 700 F2d 70, 77 [2d Cir], cert denied 464 US 816; Zerilli v Smith, 656 F2d 705, 713-715 [DC Cir]; United States Criden, 633 F2d 346, 358-359 [3d Cir], cert denied sub nom. Schaffer v United States, 449 US 1113; Silkwood v Kerr-McGee Corp., 563 F2d 433, 438 [10th Cir]; People v Korkala, 99 AD2d 161, 167; People v Bova, 118 Misc 2d 14). As formulated by the decisions of these courts, the privilege bars coerced disclosure of resource materials, such as photographs, which are obtained or otherwise generated in the course of newsgathering or newspreparing activities, unless the moving litigant satisfies a tripartite test which is more demanding than the requirements of CPLR 3101 (a). Under the tripartite test, discovery may be ordered only if the litigant demonstrates, clearly and specifically, that the items sought are (1) highly material, (2) critical to the litigant’s claim, and (3) not otherwise available. Accordingly, if the material sought is pertinent merely to an ancillary issue in the litigation, not essential to the maintenance of the litigant’s claim, or obtainable through an alternative source, disclosure may not be compelled (see, e.g., In re Petroleum Prods. Antitrust Litig., 680 F2d 5, 9 [2d Cir], cert denied sub nom. Arizona v McGraw-Hill, Inc., 459 US 909; Riley v City of Chester, 612 F2d 708, 717 [3d Cir]; Silkwood v Kerr-McGee Corp., supra, at 438 [10th Cir]; Baker v F & F Inv., 470 F2d 778, 784 [2d Cir], cert denied 411 US 966; Montezuma Realty Corp. v Occidental Petroleum Corp., 494 F Supp 780 [SD NY]).
The considerations underlying this qualified privilege are not peculiar to materials obtained in confidence. (Contrast the specific concerns about confidential sources addressed by the absolute protection of the Shield Law [Civil Rights Law § 79-h; see, Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 155-157].) As many of the courts have already noted, confidentiality or the lack thereof has little, if anything, to do with the burdens on the time and resources of the press that would inevitably result from discovery without special restrictions (see, von Bulow by Auersperg v von Bulow, *528 811 F2d 136, 143 [2d Cir], cert denied sub nom. Reynolds v von Bulow, — US —, 107 S Ct 1891; United States v Cuthbertson, 630 F2d 139, 147 [3d Cir], cert denied 449 US 1126; Matter of Consumers Union, 495 F Supp 582, 586 [SD NY]; Loadholtz v Fields, 389 F Supp 1299, 1303 [MD Fla]; People v Korkala, 99 AD2d 161, 167, supra).
Although the Supreme Court has yet to recognize a reporter’s privilege (see, e.g., Branzburg v Hayes, 408 US 665, 682-683; see generally, discussion in Tribe, American Constitutional Law § 12-22, at 971-977 [2d ed]) and, indeed, declined to adopt the three-pronged test when requested to do so in the context of a grand jury investigation (see, Branzburg v Hayes, supra, at 702-704; id., at 710 [Powell, J., concurring]; compare with id., at 740, 743 [Stewart, J., dissenting]), we agree with those Federal courts that have found the qualified privilege necessary to insure the protections guaranteed by the First Amendment.[2] Moreover, "construing [our] own constitution so as to recognize a newsman’s privilege”, as the Branzburg court foresaw we might (408 US, at 706, supra), we have no difficulty in concluding that the guarantee of a free press in article I, § 8 of the New York Constitution independently mandates the protection afforded by the qualified privilege to prevent undue diversion of journalistic effort and disruption of press functions. The expansive language of our State constitutional guarantee (compare, NY Const, art I, § 8, with US Const *529 1st Amend),[3] its formulation and adoption prior to the Supreme Court’s application of the First Amendment to the States (compare, NY Const of 1821, art VII, § 8; and Brandreth v Lance, 8 Paige 24 [1839], with Near v Minnesota, 283 US 697 [1931] — [citing Brandreth v Lance and other New York cases with approval, id., at 719, n 11]), the recognition in very early New York history of a constitutionally guaranteed liberty of the press (see, Jay, Address to the People of the State of New York, May 1788, 3 American Museum [No. 6] 559 [1792], reprinted in 3 Roots of the Bill of Rights, at 554, 560 [Schwartz ed]; Smith, Address to the People of the State of New York, May 1788 — Postscript [agreeing with Jay on that point], reprinted in id., at 566, 576), and the consistent tradition in this State of providing the broadest possible protection to "the sensitive role of gathering and disseminating news of public events” (Matter of Beach v Shanley, 62 NY2d 241, 256 [Wachtler, J., concurring]), all call for particular vigilance by the courts of this State in safeguarding the free press against undue interference.
While we agree with the three-part test articulated in the Federal courts and, moreover, adopt it under our State Constitution, it must be noted that this test is but a complement to the general principles governing compelled disclosure where they are applied to a reporter’s photographs. Under our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party (see, e.g., Cynthia B. v New Rochelle Hosp. Med. Center, 60 NY2d 452, 460-462; CPLR 3101, 3103). Thus, in deciding whether to order disclosure of photographs prepared or obtained in the course of newsgathering, a court would consider the extent, if any, that press activities will be aifected and, if so, whether such is justified by the interest to be served. Together with the particularized constitutional test we recognize today, these basic protections pertaining to discovery are, *530 of course, wholly available to control disclosure in this sensitive area (see, Cynthia B. v New Rochelle Hosp. Med. Center, supra; CPLR 3103; cf., Branzburg v Hayes, supra, at 680-681, 699-700).
Finally, contrary to plaintiffs contention, neither Matter of Beach v Shanley (supra) nor Matter of Knight-Ridder Broadcasting v Greenberg (supra) supports a different result. In Matter of Beach v Shanley, where we held that the categorical protection against compulsory disclosure of confidential sources provided by statute in this State (see, Civil Rights Law § 79-h [Shield Law]) extended to Grand Jury investigations, we declined to find a similar protection under the State Constitution only because it was unnecessary to reach the constitutional issue in that case (62 NY2d, at 254, supra). In Matter of Knight-Ridder Broadcasting v Greenberg, where we held that the same absolute Shield Law protection did not extend to nonconfidential sources, we simply noted, with regard to constitutional questions, that the Supreme Court’s decision in Branzburg v Hayes (supra) provided no additional First Amendment protection where relevant information was sought in a Grand Jury investigation, and that the issue, whether protection was afforded by the State Constitution, had not been preserved for our review (70 NY2d, at 160, supra).
Ill
In the present case, the Appellate Division, finding no constitutional protection for nonconfidential press materials, returned plaintiff’s discovery motion to Supreme Court for a hearing to determine whether the photographs sought "depicted] relevant evidence not shown in the police photographs” and were, therefore, "material and necessary” to plaintiff’s personal injury claim within the meaning of CPLR 3101. As discussed above, that standard affords inadequate protection to the newsgathering activities of the press. The more stringent, constitutionally mandated test that we have outlined should be applied.
Accordingly, the order of Supreme Court appealed from and the order of the Appellate Division brought up for review should be reversed, and the matter remitted to Supreme Court for a determination in accordance with the principles enunciated herein.

. This appeal does not involve the statutory privilege under New York’s Shield Law (Civil Rights Law § 79-h) which provides unqualified protection to a reporter’s confidential sources and materials (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151; Matter of Beach v Shanley, 62 NY2d 241). Rather, it involves the question of a constitutional privilege, State or Federal, providing qualified protection to materials which, although the product of newsgathering, were not obtained in confidence and, therefore, do not fall within the reach of the statute.

. To be sure, in some of the cases in which a constitutional reporter’s privilege was recognized, the countervailing government interest was not as compelling as the grand jury investigation in Branzburg v Hayes (408 US 665). Nevertheless, the courts have held the three-pronged test applicable regardless of the criminal or civil context (see, e.g, United States v Burke, 700 F2d 70; United States v Criden, 633 F2d 346; United States v Cuthbertson, 630 F2d 139; cf., In re Petroleum Prods. Antitrust Litig., 680 F2d 5 [discovery sought by several States which had jointly brought an antitrust action]). (This being a civil case, we, of course, do not consider the different factors present in criminal cases.)
One commentator, in questioning any reliance on Branzburg, or on any other Supreme Court decision on the subject, as a basis for finding a First Amendment reporter’s privilege, has noted: "Despite the holding in Branzburg and the discouraging tone of the majority opinion, the lower federal courts have consistently read the case to support some kind of qualified privilege for reporters” because five Justices apparently believed "that the Constitution may at times protect the confidentiality of a journalist’s sources” (Tribe, American Constitutional Law § 12-22, at 972 [2d ed]). As already noted, however, the courts have held the privilege necessary to protect nonconfidential materials as well (see, e.g., von Bulow by Auersperg v von Bulow, 811 F2d 136; United States v Cuthbertson, supra; Matter of Consumers Union, 495 F Supp 582; Loadholtz v Fields, 389 F Supp 1299).

. The protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment (see, People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557-558; Matter of Beach v Shanley, 62 NY2d 241, 255 [Wachtler, J., concurring]; Bellanca v New York State Liq. Auth., 54 NY2d 228, 235). Article I, § 8 of the Constitution assures, in affirmative terms, the right of our citizens to "freely speak, write and publish” and prohibits the use of official authority which acts to "restrain or abridge the liberty of speech or of the press”.