OPINION OF THE COURT
Kenneth K. Rohl, J.
Petitioner, Eugene T. Dooley (Dooley), Suffolk County Sheriff (Sheriff) seeks, inter alia, a judgment (1) declaring that respondent, E. Thomas Boyle (Boyle), Suffolk County Attorney (County Attorney) was and continues to be, as a matter of law, his attorney with regard to in futuro litigation arising out of an automobile accident he had in Chicago on February 6, 1988 (Accident) while operating a Suffolk County-owned vehicle in the performance of his official duties, to wit, attending a National Sheriff’s Conference seminar; (2) declaring that any statements he made to Boyle or his authorized agents, including one George Gross (Gross), regarding the accident were confidential and nondiscloseable by reason of attorney-client privilege; (3) declaring that Boyle violated that attorney-client privilege by delivering to the offices of the Honorable Patrick Henry (Henry), Suffolk County District Attorney (District Attorney), copies of written statements made by Dooley to Gross; (4) enjoining Boyle and his agents from future communication with the District Attorney; (5) directing Boyle to deliver to Dooley all files (including Dooley’s original written statements) regarding the Accident; and (6) declaring that as a result of conflicting interests between Dooley and Boyle, Dooley was permitted to retain John Ray, Esq. (Ray) as his attorney and that all legal fees resulting from such retention should be paid by Suffolk County.
On the other hand, Boyle requests a judgment declaring that (1) no attorney-client relationship ever existed between himself and Dooley and accordingly, statements made by Dooley are not within the ambit of the attorney-client privilege; (2) to the extent that any statements are adjudged privileged, such attorney-client privilege was waived as a result of Dooley’s communications to third parties; (3) to the extent that any statements are adjudged privileged that privilege must, within the factual context of this case (to wit, that Dooley’s statements may have resulted in his commission of the crimes of perjury and/or filing a false instrument), yield to superior overriding public policy considerations; (4) that all files are the property of the County Attorney’s office to do *173 with as it deems appropriate; and (5) Dooley is not entitled to have his legal fees paid by Suffolk County.[1]
In aid of a determination of the issues a hearing was ordered. Upon the close of petitioner’s case, respondent called as a witness one Kathleen Kerr (Kerr), a Newsday staff reporter. In sum and substance Kerr testified on direct examination that she wrote and Newsday published four articles regarding the Accident and that statements attributed to Boyle and/or Dooley in those articles were accurate reports of what each said.
As a predicate to cross-examination, Ray requested that Kerr produce her notes of the Newsday articles.[2] On the advice of counsel, the witness declined production and moved for a protective order asserting New York’s Shield Law (Civil Rights Law § 79-h) and in the alternative, qualified privilege under the First Amendment guarantees of free press and speech as enunciated in O’Neill v Oakgrove Constr. (71 NY2d 521).
In short, the critical statements deal with Dooley’s alleged disavowal of his use of alcohol on the night of the Accident, to whom it may or may not have been said and Boyle’s role as attorney or investigator in the alleged incident.
To the extent that the materials sought are not from confidential sources, but relate specifically to the direct quotes of named individuals (Dooley and/or Boyle) the unqualified protection granted a reporter’s confidential sources (Civil Rights Law § 79-h) is found inapplicable to the instant case.
The issue is simply whether Kerr’s notes, as the usual and ordinary product of the newsgathering process, are within the qualified privilege enunciated in O’Neill v Oakgrove Constr. (supra).
In that case, the court held that the Supreme Court improperly ordered appellant, Gannett Rochester Newspapers, to disclose to plaintiff 19 out of 58 unpublished photographs which it had taken of an automobile accident. Remanding the case for hearing on the issue of whether plaintiff’s right to *174 discovery outweighed the media’s right to qualified privilege, the court enunciated the appropriate test:
"As formulated by the decisions of these courts, the privilege bars coerced disclosure of resource materials, such as photographs, which are obtained or otherwise generated in the course of newsgathering or newspreparing activities, unless the moving litigant satisfies a tripartite test which is more demanding than the requirements of CPLR 3101 (a). Under the tripartite test, discovery may be ordered only if the litigant demonstrates, clearly and specifically, that the items sought are (1) highly material, (2) critical to the litigant’s claim, and (3) not otherwise available. Accordingly, if the material sought is pertinent merely to an ancillary issue in the litigation, not essential to the maintenance of the litigant’s claim, or obtainable through an alternative source, disclosure may not be compelled * * *
"While we agree with the three-part test articulated in the Federal courts and, moreover, adopt it under our State Constitution, it must be noted that this test is but a complement to the general principles governing compelled disclosure where they are applied to a reporter’s photographs. Under our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party * * * Thus, in deciding whether to order disclosure of photographs prepared or obtained in the course of newsgathering, a court would consider the extent, if any, that press activities are affected and, if so, whether such is justified by the interest to be served. Together with the particularized constitutional test we recognize today, these basic protections pertaining to discovery are, of course, wholly available to control disclosure in this sensitive area”. (Supra, at 527-530.)
Applying this test, it is unquestionable that Kerr’s notes are not discoverable en masse. However, to the extent that she has sworn to the accuracy of the statements, specific notes of such are discoverable.
The ultimate accuracy of the published statements goes directly to the heart of Dooley’s claims that Boyle was his attorney and that he did not waive his attorney-client privilege by disclosure to a third party. Clearly, these specific notes are both highly material and most critical. Moreover, it is impossible for Dooley to contest accuracy on cross-examination without such. He not only has the right to determine literal *175 accuracy but also if the statements are accurate or inaccurate vis-á-vis the context in which they were made. These are his sole means of challenge and the court finds this material is not otherwise available.
Finally, balancing Kerr’s and Dooley’s competing interests the court finds no undue burden is placed on her to produce notes specifically dealing with the statements. No claim is advanced that production will result in any detriment to the reporter. Reconciliation of Kerr’s blanket assertion of qualified privilege against Dooley’s need for disclosure, especially in light of the District Attorney’s acknowledged investigation into the circumstances surrounding the accident and ensuing events and the possibility of convening a Grand Jury regarding such, compels the court to hold in Dooley’s favor. (See, Cynthia B. v New Rochelle Hosp. Med. Center, 60 NY2d 452.) Indeed, to here grant the reporter absolute qualified privilege would place her in a position of having asserted, under oath, that what was printed was literally and contextually accurate, while, in effect, challenging the allegedly aggrieved party to prove otherwise and withholding the evidence which might lead to impeachment. The "Catch 22” results from competing claims of not being able to obtain disclosure of a reporter’s notes without first establishing relevancy and the inability to establish relevancy without first obtaining disclosure.
Here, the mere possibility of misstatement[3] mandates disclosure. The grant of qualified privilege does not ascribe to the grantee any right, absolute or otherwise, to determine its application. The grantee merely possesses the right of assertion as a shield to protect newsgathering activities and the persons engaged therein from becoming de facto investigative agencies for litigants. It does not throw a blanket over all discovery (O’Neill v Oakgrove Constr., supra) and cannot be applied indiscriminately or unqualifiedly as a sword to preclude challenges to the accuracy of statements ascribed to named individuals in published reports.
The case at bar is a challenge to published reports and is factually dissimilar to O’Neill (supra). Appropriate and limited disclosure is necessary.
Accordingly, Kerr is directed to produce those notes, which directly memorialize conversations she had with Boyle and/or *176 Dooley and which resulted directly in statements attributed to these individuals in published articles. In addition, Kerr is directed to produce notes regarding her conversations with Boyle and/or Dooley which contradict statements published. All remaining notes shall not be disclosed.
If discoverable and nondiscoverable notes exist on the same piece of paper, such nondiscoverable notes will be redacted. Questions regarding whether any particular writing is within the ambit of this decision shall be referred directly to the court for in camera determination.
The motion for a protective order is granted except that disclosure is directed to the limited extent set forth herein.

. Petitioner’s claims against Henry have been withdrawn and are not here considered.

. Ms. Kerr was initially served with a "So Ordered” subpoena duces tecum by respondent Boyle who, without advising the court, told Ms. Kerr that she need not produce her notes. Ray’s request for production does not require this subpoena as lynchpin but is rather the normal request for memorialization by the witness for possible impeachment during cross-examination.

. For example, a published article stating an individual "was not” doing something compared to notes indicating the opposite would be relevant and critical on cross-examination.