OPINION OF THE COURT
Eugene L. Nicandri, J.
The court has been asked to quash a Grand Jury subpoena which seeks testimony from a newspaper reporter, who alleg *287 edly tape recorded a Department of Environmental Conservation (DEC) administrative hearing.
In accordance with the mandate of CPL 190.50, the names of the decision have been changed, so as to avoid disclosure of the identity of any person subpoenaed before the Grand Jury.
As presented by the affidavits, memoranda and oral argument, the facts are as follows.
Reporter Richard Roe, working for Newspaper A as a general reporter, covered a Department of Environmental Conservation hearing involving the approval of a permit for the proposed incinerator under consideration by the St. Lawrence County Solid Waste Development Authority. At the beginning of the administrative hearing, the Administrative Law Judge called media representatives present at that time to the bench and advised them that no tape recording of the hearing would be allowed, so as to avoid any potential conflict between such tape recordings and the official stenographic record of the proceeding. It is not clear to the court whether Richard Roe was present before the Administrative Law Judge at that time, or not.
Later, a spectator who was present at the hearing complained to the Administrative Law Judge that she observed Richard Roe using a tape recorder during a portion of one day of the hearing. Her suspicion that the proceedings were tape recorded was, in her mind, confirmed when she read the next day’s news coverage of the hearing carried by Newspaper A. The article by Richard Roe contained what the spectator complainant believed were verbatim portions of the testimony.
The Administrative Law Judge referred this complaint to the office of the Attorney-General, who in turn forwarded it to the attention of the St. Lawrence County District Attorney. The District Attorney referred it to the Ogdensburg Police Department for investigation, and the police interviewed the complainant. Richard Roe refused to answer police questions. The Ogdensburg Police Department recommended that the file be closed. The District Attorney elected not to follow this recommendation. The Grand Jury directed the District Attorney to subpoena Richard Roe to testify. Richard Roe, who now works for Newspaper B, has been granted immunity.
The focus of the Grand Jury inquiry is whether or not Newspaper A violated various provisions of the law by allegedly allowing or directing its reporter to tape record a proceeding in apparent violation of a direction by the Administra *288 tive Law Judge not to do so. Newspaper B now seeks to protect its reporter by this motion to quash the subpoena.
In support of its position, Newspaper B argues that the reporter is a professional journalist who was involved in on-the-job news-gathering activities. The event in question was a public hearing and involved no confidential sources. In particular, the District Attorney has acknowledged to Newspaper B’s counsel that the purpose of the subpoena to Richard Roe was to compel testimony as to whether Richard Roe had tape recorded the DEC hearing in October 1989.
The District Attorney’s theory of law is that Civil Rights Law § 52 makes it a misdemeanor for a person to tape record a hearing and that when a news reporter does so in the context of preparing a written news account based on the tape recording, this constitutes a "broadcast” of proceedings in violation of the statute.
The newspaper argues that no reasonable interpretation of section 52 of the Civil Rights Law includes tape recordings by a news reporter for the purpose of maintaining accuracy in a subsequent written account, and that therefore the purpose of the Grand Jury investigation is not legitimate. The legal theories underlying the newspaper’s position involve a qualified newsperson’s privilege claimed under the State and Federal Constitutions. The newspaper grounds its arguments particularly on the recent Court of Appeals holding in O’Neill v Oakgrove Constr. (71 NY2d 521, 527 [1988]), in which the court found that article I, § 8 of the NY Constitution provides an independent ground for recognition of a qualified reporter’s privilege, regardless of whether the material sought was confidential or nonconfidential, and further noting that the qualified privilege is only overcome when the party seeking disclosure can show that the items or information sought are (1) highly material, (2) critical to the litigant’s claim, and (3) not otherwise available.
However, the court itself noted (71 NY2d 521, 528, n 2, supra) that different issues were presented in the Grand Jury context, in which the government had a strong countervailing interest in compelling disclosure. The Court of Appeals noted that in that situation the United States Supreme Court had declined to find a qualified reporter’s privilege in Branzburg v Hayes (408 US 665 [1972]). On that question, the Court of Appeals in O’Neill (supra) explicitly did not express an opinion.
*289 It would appear that some other Federal courts in various contexts are recognizing a qualified reporter’s privilege against disclosing even nonconfidential information. (See, for example, Matter of Consumers Union, 495 F Supp 582 [SD NY 1980]; United States v Burke, 700 F2d 70 [2d Cir 1983], cert denied 464 US 816 [1983].) However, in this Federal judicial district such is not necessarily the law, even in the context of civil litigation. (Solarsen Elec. Motor Car Corp. v American Motors Corp., 506 F Supp 546, 552 [ND NY 1981] [requiring reporter to appear under subpoena and raise privilege after questions].)
The newspaper further relies upon the Court of Appeals holding in Matter of Beach v Shanley (62 NY2d 241 [1984]). However, that case was decided under the New York State Shield Law (Civil Rights Law § 79-h).
In opposing the motion to quash, the People have tendered to the court for in camera examination a Grand Jury transcript of testimony of the complainant. The court has determined no disclosure is required in order to resolve the issues presented. In addition, the District Attorney points out factually that the Grand Jury directed him to issue the subpoena, not vice versa and that its power to do so is virtually unlimited.
The District Attorney points out that it is his statutory function (CPL 190.25 [6]) to be the legal advisor to the Grand Jury, along with the supervising court, and that no one else may give legal advice to that body. The People further note that the Grand Jury has an important investigatory function in addition to its more traditionally recognized accusatory function. Furthermore, the Grand Jury can and periodically does return a "no bill”, thus clearing accused persons of criminal liability.
Finally, the District Attorney points out that what is sought from Richard Roe is simply the reporter’s testimony, not the production of any materials or alleged tapes, a fact which makes inapposite much of the case law relied upon by the newspaper in its motion to quash.
Moreover, the People take the position that the news reporter’s testimony is unavailable from any other source and is directly relevant to the question of whether the news-gathering techniques of Newspaper A violated the law.
It should be noted at the outset that this case does not involve New York’s so-called Shield Law (Civil Rights Law *290 § 79-h), which protects news gatherers against involuntary disclosure of explicitly confidential sources of information. Rather, this case presents the question whether the qualified privilege recognized by the New York Court of Appeals in the civil context in O’Neill v Oakgrove Constr. (supra), and by the lower Federal courts, but not by the United States Supreme Court (Branzburg v Hayes, supra), protects a news reporter from an obligation to appear and testify before a Grand Jury when the avowed purpose of the investigation concerns the news-gathering procedures of the reporter’s employer, rather than news obtained from a third-party source, confidential or otherwise. No case cited by the parties or discovered by the court directly answers this question.
As a matter of statutory background, either the District Attorney or the Grand Jury itself, acting through the District Attorney may issue a subpoena to any person believed to possess relevant information or knowledge concerning the subject of the investigation. (CPL 190.50 [2], [3].)
While a Grand Jury subpoena may be attacked as having been issued in bad faith (People ex rel. Van Der Beek v McCloskey, 18 AD2d 205 [1st Dept 1963]) that has not been alleged in this case. Both subpoenas for testimony and for the production of documents enjoy a strong presumption of validity and should only be quashed upon a showing of impropriety or bad faith. For example, the Court of Appeals has held that to the extent that a Grand Jury subpoena seeks testimony, the assertion that the contemplated testimony is subject to a privilege will not usually justify quashing the subpoena, but rather litigation must await such time as when the witness refuses to answer the question on the ground that privileged information is concerned and an attempt is thereafter made to compel a response. (Matter of Beach v Shanley, 62 NY2d 241, 248-249 [1984], supra; see also, Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608, 72 NY2d 307 [1988], cert denied 488 US 966.)
The court must balance the competing interests of recognizing the qualified news reporter’s privilege under appropriate circumstances against the government’s interest in an unimpeded Grand Jury investigation of legitimate subjects of inquiry. (O’Neill v Oakgrove Constr., supra; People v Rand, 136 Misc 2d 1034 [Sup Ct, Richmond County 1987].)
It is significant that what is sought for Grand Jury purposes is merely testimony and not the disclosure of documents or *291 materials. As noted by the Court of Appeals in Matter of Beach v Shanley (supra, at 248), although admittedly in the context of a Shield Law application to protect confidential sources, "More troubling is petitioner’s attempt to avoid any appearance before the Grand Jury. As noted, the assertion of a testimonial privilege normally must be withheld until a question is posed.”
Indeed, the United States Supreme Court said in construing the First Amendment that "[t]he sole issue before us is the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime. Citizens generally are not constitutionally immune from grand jury subpoenas; and neither the First Amendment nor any other constitutional provision protects the average citizen from disclosing to a grand jury information that he has received in confidence.” (Branzburg v Hayes, 408 US 665, 682, supra.)
While it may be that the New York courts have found a State constitutional qualified privilege under article I, § 8 of the NY Constitution, even in the Grand Jury context, the Court of Appeals has already stated that this does not undermine a Grand Jury’s power to issue a subpoena and the initial responsibility of a subpoenaed reporter witness to attend. (Matter of Beach v Shanley, 62 NY2d 250, supra.)
Nothing in the papers before the court indicates that the news reporter, if required to attend before a Grand Jury, will refuse to answer any particular question. It would certainly be inappropriate for the court to speculate what might be the reporter’s position on any particular question. Nor will the court engage in speculation about the legitimacy of either the purpose or the potential charge on the law by the District Attorney to the Grand Jury. Rather, both the Grand Jury and the District Attorney are entitled to a strong presumption of legitimacy of their role. The court is not free at this point in time to direct the District Attorney as to what law may or may not be relevant to the Grand Jury’s investigation. Certainly this court would have full authority upon application to examine that question in the event an indictment were returned.
The court has, therefore, weighed the competing interests of the Grand Jury investigation and the qualified privilege of news reporters. Under the unusual factual circumstances of this case, at this stage, an insufficient showing has been made *292 to justify quashing the subpoena. The newspaper has not convinced the court , there can be no conceivable legitimate investigation of the matter under consideration sufficient to exempt the news reporter from even attending the Grand Jury. However, this court has in no way hereby determined its ruling in the event an objection is made to a particular question asked of the witness before the Grand Jury. That decision must await any registered objection to the questions posed to the witness.
The news reporter is therefore directed to comply with the subpoena for testimony and the news reporter’s right to raise any question of qualified privilege in response to a particular question is hereby reserved for further consideration by the court.
It is further ordered that save for this decision, all moving papers, documents and transcripts are sealed, pending further order of a court of competent jurisdiction.