OPINION OF THE COURT
Lucy Billings, J.
I. Background
On March 8, 2011, upon petitioner’s ex parte application, the court (Silver, J.) ordered Peter Eavis, a journalist residing in New York, to comply with a subpoena to testify at a deposition in New York in an action in New Jersey Superior Court, Fairfax Fin. Holdings Ltd. v S.A.C. Capital Mgt., LLC (NJ Super Ct, Law Div, Morris County, docket No. MRS-L-2032-06-4197). Fair-fax Holdings is a publicly traded, Canadian insurance corporation. Petitioner, a Tennessee investment bank, and its employee John Gwynn are two of the multiple defendants named in the New Jersey action, commenced in 2006. In early 2011, the New Jersey Superior Court authorized petitioner to seek Eavis’s deposition. Eavis now moves to quash the subpoena for his deposition.
In the New Jersey action, the plaintiff Fairfax Holdings claims that all the defendants, including petitioner here and its employee Gwynn, acted in concert to disseminate false information about Fairfax Holdings’ finances and the value of its stock to the financial media, so as to profit by short selling the stock. The latest amended complaint in the New Jersey action, the third amended complaint dated July 27, 2008, refers to seven articles minutely scrutinizing and raising questions about Fair-fax Holdings’ finances that appeared between January and mid-May 2003 under Eavis’s byline on TheStreet.com, a financial news and analysis website. The third amended complaint further alleges that information about Fairfax Holdings provided to TheStreet.com originated either with petitioner’s employee Gwynn or with codefendants designated the Rocker defendants and that the codefendant David Rocker held a financial interest in the TheStreet.com website.
Petitioner presents the seven articles by Eavis between January and mid-May 2003 in opposition to Eavis’s motion to quash *1060 the subpoena. Three of the articles, dated February 3, February 12, and March 12, 2003, cite negative information and negative views about Fairfax Holdings as reported by Gwynn.
The journalist Eavis is not a party to the New Jersey action and has not otherwise been sued for defamation by any of the parties to that action. The limitations period of one year for defamation actions in both New York and New Jersey has expired. (CPLR 215 [3]; NJ Stat Ann § 2A:14-3.) Neither has Fairfax Holdings named him as a participant in the conspiracy alleged in the New Jersey action, nor has petitioner sought to implead him as a third-party defendant in that action.
II. Eavis’s Motion to Quash the Subpoena
Eavis has moved to quash petitioner’s subpoena and for a protective order pursuant to CPLR 3103, Civil Rights Law § 79-h, and New Jersey Statutes Annotated § 2A:84A-21 (b). Under New Jersey law, a reporter’s journalistic privilege is absolute. (Maressa v New Jersey Monthly, 89 NJ 176, 189, 445 A2d 376, 383 [1982].)
At oral argument of the motion to quash, the parties stipulated that Eavis would appear with his attorney in response to the subpoena and provide testimony limited to authenticating copies produced by petitioner of TheStreet.com articles written by Eavis. He subsequently has complied with that stipulation. Nevertheless, petitioner still seeks to question Eavis on three subjects to which he does not agree.
The disputed areas of inquiry include (1) Eavis’s background; (2) the standards, procedures, and practices Eavis employs in writing articles; and (3) whether the opinions in the articles in question were his own opinions and he believed in the accuracy of those opinions. Eavis maintains that these areas of inquiry represent an attempt to circumvent the journalist’s privilege afforded him under New York’s “Shield Law” (Civil Rights Law § 79-h) to show that he wrote the articles in question in furtherance of the conspiracy against Fairfax Holdings that forms the basis for the New Jersey action. Both parties here recognize that the many other parties in the New Jersey action would be entitled to attend any deposition of Eavis and would not be bound by a stipulation from petitioner and Gwynn restricting the deposition’s permissible scope. (CPLR 3113 [c].) Hence these other parties’ cross-examinations of Eavis easily could foil any attempt by the parties here to limit the deposition to subjects not protected by Civil Rights Law § 79-h. (See Baker v Goldman Sachs & Co., 669 F3d 105, 110-112 [2d Cir 2012].)
*1061 III. The Reporter’s Privilege under New York Law
In New York, a news reporter’s qualified privilege regarding nonconfidential news gathering materials derives from New York State Constitution, article I, § 8, as well as Civil Rights Law § 79-h, based on a tripartite test “more demanding than the requirements of CPLR 3101 (a).” (O’Neill v Oakgrove Constr., 71 NY2d 521, 527 [1988].)
“Under the tripartite test, discovery may be ordered only if the litigant demonstrates, clearly and specifically, that the items sought are (1) highly material, (2) critical to the litigant’s claim, and (3) not otherwise available. Accordingly, if the material sought is pertinent merely to an ancillary issue in the litigation, not essential to the maintenance of the litigant’s claim, or obtainable through an alternative source, disclosure may not be compelled . . . .” (Id.)
These requirements subsequently were incorporated into an amended Civil Rights Law § 79-h, which affords an absolute privilege for confidential news gathering materials (Civil Rights Law § 79-h [b]) and a qualified privilege for nonconfidential news gathering materials. (Civil Rights Law § 79-h [c].) To overcome the privilege for nonconfidential materials, the party seeking the evidence still must meet the statute’s three-pronged test formulated by the Court of Appeals. (O’Neill v Oakgrove Constr., 71 NY2d at 527; see Matter of CBS Inc. [Vacco], 232 AD2d 291, 292 [1st Dept 1996].) Petitioner has not shown why it is entitled to depose Eavis under any of these criteria.
A, Eavis’s Background
Regarding the first of the three disputed areas of questioning, Eavis himself offers that he worked for TheStreet.com from January 1998 until late 2004 as a reporter and journalist “engaged in gathering, preparing, collecting, writing and editing news published by TheStreet.com on its public website and on its subscription service.” (Aff of Peter Eavis 11 2.) Petitioner has not shown that it is unable to discover Eavis’s further background, nor described any efforts to acquire this information, through sources in the public domain, including the Internet, for example. Neither has petitioner shown why this information is “highly material” or “critical” to its defense in the New Jersey action. (O’Neill v Oakgrove Constr., 71 NY2d at 527.) In any event, having failed to show that information regarding Eavis’s background is otherwise unavailable, peti *1062 tioner is not entitled to depose him on this subject. (CBS Inc. [Vacco], 232 AD2d at 292; Flynn v NYP Holdings, 235 AD2d 907, 909 [3d Dept 1997].) In fact it borders on incredulous that petitioner would insist it needs Eavis’s deposition for this purpose.
B. Eavis’s Standards, Procedures, and Practices
In support of petitioner’s request to depose Eavis to discover the standards and procedures he employs in writing articles, petitioner likewise fails to satisfy the three criteria of O’Neill v Oakgrove Constr. (71 NY2d at 527) and Civil Rights Law § 79-h (c). Eavis’s seven TheStreet.com articles about Fairfax Holdings on their face illustrate his work standards and methods for accuracy and thoroughness, without requiring a deposition. The articles themselves show that, in writing them, Eavis followed the movement of Fairfax Holdings’ shares on the New York Stock Exchange and studied in minute detail its annual reports, its other financial reports, including balance sheets, its insurance and reinsurance coverage, its source of dividend payments, its subsidiaries’ finances, and its press releases. He submitted questions directly to Fairfax Holdings in connection with each article and attempted to follow up via a separate telephone conversation with Fairfax Holdings’ chief executive or other personnel. Eavis participated in telephone conferences with Fairfax Holdings’ chief executive on topics ranging from a reinsurance deal to release of its fourth quarter earnings. Eavis read and investigated Gwynn’s negative reports about Fairfax Holdings; consulted related reports and news stories in other publications and wire services, such as Dow Jones Business News and Business Wire; and also consulted government insurance regulators addressing the financial soundness of a Fairfax Holdings subsidiary.
To all these tasks Eavis demonstrates he applied a knowledge of the stock market, corporate finance, and corporate governance, yet allowed that his analyses might be incorrect. Last but not least, each of his articles about Fairfax Holdings includes the footnote: “In keeping with TSC’s editorial policy, Peter Eavis doesn’t own or short individual stocks. He also doesn’t invest in hedge funds or other private investment partnerships. He welcomes your feedback and invites you to send any to peter. eavisrealmoney.com. ” (Aff of Ira J. Hammer, exhibit 1.) Faced with the transparency of Eavis’s reporting and articles, petitioner has not shown that his deposition on the procedures he followed in writing his TheStreet.com articles satisfies any of *1063 the criteria for disclosure set forth in O’Neill v Oakgrove Constr. (71 NY2d at 527) and Civil Rights Law § 79-h (c).
C. Whether the Opinions in Eavis’s Articles Were His Own and Eavis Believed in Their Accuracy
Petitioner’s final request, to question Eavis about his state of mind — whether the opinions expressed in his TheStreet.com articles were his opinions and whether he believed they were accurate — is not supportable by logic or law. By affixing his byline at the head of each TheStreet.com article, Eavis explicitly represented that the opinions expressed in the article were his opinions. His subjective state of mind in publishing those opinions is irrelevant. (Application of Consumers Union of U.S., Inc., 495 F Supp 582, 588 [SD NY 1980].) Moreover, a question about the accuracy of an opinion is a contradiction in terms; an opinion is neither true nor false. (Gross v New York Times Co., 82 NY2d 146, 153 [1993]; Guerrero v Carva, 10 AD3d 105, 111 [1st Dept 2004]; see Mann v Abel, 10 NY3d 271, 276 [2008]; Brian v Richardson, 87 NY2d 46, 51 [1995]; Sandals Resorts Intl. Ltd. v Google, Inc., 86 AD3d 32, 39-40 [1st Dept 2011].)
D. Further Reasons to Quash the Subpoena
Fairfax Holdings’ third amended complaint in the New Jersey action, particularly paragraphs 26, 28, 32, 33, 47, 59, 62, 63, 85, 88, 96, 97, and 111-137, details the alleged roles of petitioner, Gwynn, and codefendants Rocker Partners L.P. and David Rocker, the primary owner and manager of Rocker Partners L.P, in a conspiracy to downgrade and short Fairfax Holdings’ stock. The third amended complaint describes their roles in inducing TheStreet.com and Eavis to publish adverse financial information and misinformation about Fairfax Holdings by providing the website and its byliner false and misleading analyses of Fairfax Holdings’ finances. Plaintiff Fairfax Holdings portrays the Rocker defendants as exercising strong influence over the TheStreet.com website, in which David Rocker held “a substantial equity investment.” (Aff of Carolyn K. Foley, exhibit 3,11 85.)
Petitioner, Gwynn, Rocker Partners, and Rocker each possess independent knowledge of any information each provided to TheStreet.com and to Eavis. Thus they are independent alternative sources for such information. Petitioner has not shown that it sought and failed to obtain this information from these other parties in the New Jersey litigation, which has been ongoing since 2006, and thus has not ruled them out as sources other than Eavis for the information. According to the third amended *1064 complaint, paragraph 136, Gwynn continued to publish negative reports about Fairfax Holdings through November 2004, without further reports or articles about Fairfax Holdings by Eavis.
In the final analysis, petitioner seeks information from Eavis’s deposition identifying David Rocker or another person as the secret, confidential source who induced him to write his TheStreet.com articles about Fairfax Holdings. That information is absolutely privileged pursuant to Civil Rights Law § 79-h (b). (Matter of Beach v Shanley, 62 NY2d 241, 251 [1984].)
Even if this absolutely privileged information is not petitioner’s objective, and even if the journalist’s deposition is limited to nonprivileged topics such as the procedures and practices followed in writing his articles, as recognized above the deposition would “have the effect of compelling testimony on cross-examination within the privilege.” (Baker v Goldman Sachs & Co., 669 F3d 105, 111-112 [2d Cir 2012].) Cross-examination of a deponent is not limited to the scope of direct examination by the party that sought the deposition. (CPLR 3113 [c].) Nor may his attorney object to questioning or otherwise participate in the deposition. (Thompson v Mather, 70 AD3d 1436, 1438 [4th Dept 2010].) Eavis is relegated to simply claiming his journalist’s privilege, which he does by this motion.
The risk of cross-examination within the scope of the privilege is particularly acute in relation to Eavis’s deposition because the adversary of petitioner and Gwynn, Fairfax Holdings, as well as many codefendants in the New Jersey action, all are entitled to participate in the deposition, but have not agreed to limit their cross-examination of Eavis. Nothing therefore prohibits their cross-examination from likely, if not necessarily, trenching on Eavis’s privilege as a journalist granted by Civil Rights Law § 79-h. This risk further supports quashing the subpoena served on Eavis. (Baker v Goldman Sachs & Co., 669 F3d 105, 110-112 [2d Cir 2012].)
IV Conclusion
For all the foregoing reasons, the court grants respondent Peter Eavis’s motion to quash the subpoena to take his deposition in Fairfax Fin. Holdings Ltd. v S.A.C. Capital Mgt., LLC (NJ Super Ct, Law Div, Morris County, docket No. MRS-L-2032-06-4197).