OPINION OF THE COURT
W. Patrick Falvey, J.
Movants, Jackie Majerus, a reporter for The Citizen newspaper in Auburn, New York, and Charles Miller a reporter for *16 the Syracuse Herald-Journal, The Syracuse Herald American and The Post-Standard, all newspapers in Syracuse, New York, seek orders quashing "subpoenas and testificandum” served on May 8, 1991 and May 9, 1991 respectively requiring each of them to testify on behalf of the People in the above-entitled criminal matter.
The movants each assert that as professional journalists, they have a qualified privileged from testifying under New York Civil Rights Law § 79-h as well as the First Amendment of the Federal Constitution and article I, § 8 of the New York State Constitution.
The subpoenas were issued by the District Attorney’s office as a result of various published interviews conducted with the defendant concerning his involvement with the charges pending against him. More specifically, the articles in question as provided by counsel were published in The Citizen on May 11, 1990; May 13, 1990; May 20, 1990; July 6, 1990; December 9, 1990; February 14, 1991 and an article undated but believed to be in 1991 and entitled "Family: Cheches Team Up in bail business”, in the Syracuse Post-Standard on May 12, 1990, and May 14, 1990, as well as The Syracuse Herald American on May 11, 1990 and May 13, 1990. It is noted that Civil Rights Law § 79-h was amended effective November 1, 1990. (L 1990, ch 33.) Therefore, Civil Rights Law § 79-h (bMg) is applicable to those articles published after November 1, 1990 and as to those published prior the court will rely on relevant case law.
The District Attorney also wishes to examine movants concerning any unpublished conversations with the defendant regarding these charges. There is no claim by either party that the information sought is of a confidential nature.
Movants assert that the District Attorney has failed to meet the three-pronged test with regard to published or unpublished material as set out in Civil Rights Law § 79-h (c) and O’Neill v Oakgrove Constr. (71 NY2d 521).
The United States Supreme Court has declined to create an absolute testimonial privilege for newspeople. (Branzburg v Hayes, 408 US 665.) However, newsgathering is not without its First Amendment protection. And there exists a qualified privilege to gather, write, edit and disseminate the news. (People v Troiano, 127 Misc 2d 738.)
The privilege has been found not to exist if the material obtained by a newsperson was not intended by the informant *17 to be confidential. (Matter of WBAI-FM v Proskin, 42 AD2d 5.) Also, the privilege is waived if the newspaper published the material. (People v Wolf, 39 AD2d 864.) Nor does a privilege exist where the information subpoenaed was published or was not given in confidence. (People v Dupree, 88 Misc 2d 791.)
"In judging a claimed privilege against compelled disclosure, there must be a 'striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct.’ ” (People v Korkala, 99 AD2d 161, 167, citing Branzburg v Hayes, supra.)
The court in United States v Markiewicz (732 F Supp 316 [ND NY 1990]) carefully analyzed the Branzburg v Hayes decision (supra). It is clear from a close reading of this case that the extent of the privilege is governed by the circumstances of the case presented. The right of confidentiality and testimonial compulsion comes into conflict with the demand of a party for production of evidence in a judicial proceeding. In a criminal case this clash calls for weighing of the claim to privilege against the obligation of all citizens to give testimony and if the later is found to be superior then the former must give way to it. (People v Monroe, 82 Misc 2d 850.)
The case before this court involves the defendant who has been charged in a 259-count indictment containing 130 counts of forgery in the second degree and 129 counts of offering a false instrument for filing in the first degree involving the alleged fraudulent preparation and filing of various bail bonds. Prior to indictment the defendant signed a written affidavit regarding his involvement which has been declared admissible in the People’s case-in-chief.
In what makes this case unique, the defendant without being solicited sought out the press and gave numerous interviews regarding his part in the specific charges. Parts of those interviews were published at various times.
The District Attorney now subpoenas the reporters involved to testify as to the defendant’s statements as they concern the charges.
The District Attorney asserts that he has met the three-pronged test of Civil Rights Law § 79-h (c), O’Neill v Oakgrove Constr. (supra), as well as the more flexible test set out in Markiewicz (supra).
This test requires the court to evaluate a reporter’s claimed First Amendment privilege to determine whether the information sought is 1) highly material and relevant; 2) that it is *18 necessary or critical to the maintenance of the parties’ claim and 3) not obtainable from other available sources. Markiewicz (supra) established a somewhat more flexible standard in reviewing the privilege applying whether the testimony sought is 1) relevant; 2) not unduly cumulative and 3) not available from other sources.
In applying the above tests to the facts it appears to this court that the defendant has sought out the press and discussed, with impunity, the various aspects of his involvement with the charges while at the same time asserting, as is his right, that his statement to the District Attorney was involuntary because he was made certain promises. It appears to this court that any statements made by the defendant whether published or not as they relate to the various counts of the indictment are highly material and relevant to the People’s case.
Certainly the defendant’s statements involving himself with the charges are important in maintaining the People’s claim as an accused’s admissions are legally competent evidence unless given in violation of the defendant’s rights under CPL 60.45. Certainly a defendant’s voluntary, unsolicited statements to one who is in no way connected with either party to a lawsuit could be very necessary and critical to proving the People’s claim.
The main issue before this court is whether or not the information is available from other sources.
Movants state that there are other sources such as the defendant’s former attorney, William McKeon, Esq., who was present at the interview with reporter Miller. The District Attorney could testify concerning the defendant’s admissions. Also, two Cayuga County legislators, Herbert Marshall and Jeffrey Edwards, talked with the defendant and filed affidavits concerning their discussions with him.
The movants indicated that the People are looking for unimpeachable sources since the credibility of these particular alternate sources could possibly be challenged.
This court rejects this argument.
It is imperative to guarantee a fair trial not only to the defendant but also the People. All witnesses unless otherwise privileged should be available to testify. In furtherance of this, the court should view the alternative witnesses in the light of whether by reason of their relationship to the defendant or the People or respective counsel as to whether or not they *19 might be biased or hostile to either side. (See, People v Dupree, supra.)
Here Attorney McKeon was defendant’s previous attorney who testified at the Huntley hearing. He could very well feel inhibited or have a reason to lack recollection for other than lack of memory. He clearly could be a hostile witness.
Herbert Marshall and Jeffrey Edwards are members of the Cayuga County Legislature and as such are parties to civil lawsuits instituted against the defendant for collection of moneys on a certain bond that the defendant allegedly forged.
The movants suggest that defendant’s admissions would prove the People’s case. However, the defendant may properly challenge his admission to determine that issue. An issue that is not present with the defendant’s statements to the press. Of course, it is up to the finder of the facts to determine what portions of any witnesses’ testimony it chooses to believe or disbelieve.
The defendant by seeking out the press, no matter what his reasons, cannot use the press for a tactical advantage at trial. It is clear that the District Attorney could not interview the defendant without the defendant first waiving his Fifth Amendment rights in the presence of this attorney.
It does not appear that there are other sources available to the People.
The issue that the testimony is cumulative and serves only to resolve issues of credibility and weight has also been raised. However, at this point the court has only seen the articles in question; it does not have the testimony of other potential trial witnesses and thus has no frame of reference within which to assess the validity of the petitioners’ claims. Furthermore, the rules of evidence or privilege may be legitimately invoked during trial in order to ensure due process, fair trial and free press.
It is suggested that the People call the movants after all other evidence germane to this issue has been presented so that the court could then compare the testimony if a question were raised as to cumulative for the purpose of bolstering.
The court denies the movants’ application without prejudice to renew, after other witnesses have testified and orders that they shall testify in answer to questions concerning all pub *20 lished answers of the defendant in the articles previously enumerated. As to any unpublished information, the movants shall answer all questions concerning any undisclosed information given to them by the defendant as it relates to any specific charge in the indictment.