OPINION OF THE COURT
J. Emmett Murphy, J.
The American Broadcasting Companies, Inc. (ABC), producer Jennifer Maguire, correspondent Chris Wallace, and associate producer Andrea Wong (Journalists) have moved to quash subpoenas duces tecum issued by the District Attorney of Westchester County, directing their appearance before the Grand Jury and their production of "the complete, unedited video and audio recordings, including outtakes, of any and all interviews of Ricardo Caputo, conducted in advance of the March 17, 1994 broadcast of PrimeTime [Live]”. After a hearing pursuant to Civil Rights Law § 79-h, the motion to quash is granted.
A Westchester County Grand Jury is conducting an investigation into the death of psychologist Judith Becker, who was found strangled with a stocking in her apartment in October of 1974. On March 17, 1994, ABC aired on its evening news program, PrimeTime Live, portions of a taped interview with Ricardo Caputo, a suspect in the killing of Judith Becker and three other women in the 1970’s. The approximate two-hour interview by Journalists employed by ABC was conducted at the request of and in the offices of counsel for Mr. Caputo, immediately prior to his surrender to the police on March 9th. During the interview, correspondent Chris Wallace asked Mr. Caputo, "Did you kill Judith Becker?” Mr. Caputo responded, "Yes, sir.” Also during the interview, Mr. Caputo made statements that attribute the killing to a mental illness. At the time of the incident, Caputo was a patient at the Manhattan Psychiatric Center, after having been found incompetent to stand trail for the murder of his fiancée, Natalie Brown. The prosecution has been furnished with a cassette copy and a transcript of the broadcast. Since only edited segments of the approximately two-hour interview were telecast, the District Attorney seeks production of the outtakes (i.e., the video and audio footage that was not broadcast).
It is undisputed that the interview was not conducted under any understanding or expectation of confidentiality. In contrast, the clear expectation was that the interview would be broadcast on the "PrimeTime Live” program, thus exposing both the material and its source. Consequently, no absolute *962 privilege shields the outtakes (see, Civil Rights Law § 79-h [b]; People v Korkala, 99 AD2d 161; see also, Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151). However, the non-broadcast material is subject to a qualified privilege (Civil Rights Law § 79-h [c]; O’Neill v Oakgrove Constr., 71 NY2d 521). In order to obtain disclosure of the outtakes, the prosecution must make a clear and specific showing that the unpublished news (1) is highly material and relevant; (2) is critical or necessary to the maintenance of the prosecution’s claim or proof of an issue material thereto; and (3) is not obtainable from any alternative source (Civil Rights Law § 79-h [c]). "Accordingly, if the material sought is pertinent merely to an ancillary issue in the litigation, not essential to the maintenance of the [prosecution’s] claim, or obtainable through an alternative source, disclosure may not be compelled.” (O’Neill v Oakgrove Constr., 71 NY2d 521, 527, supra.)
After reviewing the broadcast of the Wallace/Caputo interview, in particular the voice-overs, a reasonable inference can be drawn that the Judith Becker homicide, as well as the defendant’s mental status, was discussed in greater detail with Caputo in the nonbroadcast segments of the interview. In the context of a criminal case, it is obvious that a defendant’s voluntary, unsolicited statements to the press which are not subject to suppression, are highly material and relevant (see, People v Cheche, 151 Misc 2d 15; People v Craver, 150 Misc 2d 631, 632). For example, to the extent Caputo’s narrative of the homicide harmonizes with physical evidence at the crime scene, the outtakes will be highly material and relevant in establishing the veracity of his conclusory, broadcast admission that he killed Judith Becker. It can also be safely presumed from the fact Caputo has given notice of his intention to interpose the defense of mental disease or defect in his pending prosecution for the murder of Natalie Brown, and from counsel’s transparent trial strategy in soliciting the Caputo/Wallace interview, that Caputo will also rely on an insanity defense to avoid criminal responsibility for Ms. Becker’s death. Since the truth or falsity of an insanity defense depends almost entirely upon a retrospective analysis of defendant’s mental operations, Caputo’s present impressions of his mental state at the time of the crime will also be highly material and relevant to a trial issue which cannot be characterized as ancillary. Accordingly, the court concludes that the prosecution has adequately satisfied the first prong of the *963 three-prong test, by demonstrating the requested outtakes to be highly material and relevant.
The court also finds that the prosecution has satisfied the third prong of the test in that the information sought to be obtained from the outtakes is not available from other sources. It is uncontroverted that there were no other witnesses to the Caputo/Wallace interview, aside from Caputo, defense counsel and the ABC Journalists. At the conclusion of the interview and at the time of Caputo’s surrender to the police, defense counsel instructed the police not to interview his client. Although an attorney-client privilege may not be applicable to prevent disclosure of the contents of his client’s nonbroadcast statements (see generally, Richardson, Evidence § 413 [Prince 10th ed]), compelling disclosure from defense counsel would not be a feasible alternative to pursue since defense counsel would likely be a hostile witness (see, People v Cheche, 151 Misc 2d 15, 19, supra).
The Journalists argue that, aside from the outtakes, the prosecution has alternative sources available for discovering Caputo’s state of mind at the time of the offense should Caputo raise the defense of lack of responsibility by reason of mental disease or defect. Specifically, CPL 240.30 (1) provides the prosecution access to any report or document concerning any psychiatric examination of Caputo on behalf of the defense and CPL 250.10 (3) entitles the prosecution, upon notice of such a defense, to apply for an order directing Caputo to submit to an examination by a psychiatrist for the State. Initially, the court notes that these discovery procedures are not available at this stage of the criminal proceedings. Nor are the discovery provisions an adequate substitute for uncovering inculpatory statements that could be considered in deciding whether or not Caputo committed the crime charged, because, unlike Caputo’s comments recorded on the outtakes, any statement made by a defendant to a psychiatrist or licensed psychologist who examines the defendant is admissible solely on the issue of the defendant’s lack of criminal responsibility by reason of mental disease or defect (CPL 60.55 [2]). Consequently, the court rejects the argument that the nonbroadcast material is obtainable through an alternative source.
The dispositive issue before the court is whether or not the prosecution has demonstrated, clearly and specifically, that the outtakes are critical or necessary to the People’s presentation of the case to the Grand Jury.
*964 The prosecution contends that defendant’s nonbroadcast statements are necessary to refute a prospective defense of not responsible by reason of mental disease or defect as that defense was defined in Penal Law former § 30.05, which was applicable at the time of the homicide (Penal Law former § 30.05, repealed Nov. 1, 1984, reenacted as an affirmative defense in Penal Law § 40.15). Since the applicable defense of mental disease or defect is an ordinary defense, the People argue that the outtakes are critical in view of their heavy burden of disproving the defense beyond a reasonable doubt.
However, the prosecution’s argument ignores the fact that the People may rely on the presumption of sanity (see, People v Silver, 33 NY2d 475) to establish a prima facie case before the Grand Jury and that a defense of mental disease or defect is not properly within the province of the Grand Jury (see, People v Lancaster, 69 NY2d 20). The Grand Jury performs the dual function of investigating criminal activity to determine whether sufficient evidence exists to accuse a citizen of a crime, and of protecting individuals from needless and unfounded prosecutions (People v Lancaster, supra, at 25; People v Pelchat, 62 NY2d 97, 104). Although the defense of mental disease or defect is a complete defense in that it would relieve a defendant of responsibility for his otherwise criminal conduct, it is also unique because it does not have the potential for eliminating a " 'needless or unfounded prosecution’ ” (People v Lancaster, 69 NY2d 20, 28, supra). Where evidence suggests a defendant suffered a mental disease or defect at the time of the offense, prosecution for the crime is necessary so that a determination may be made as to whether the defendant is to be relieved of criminal responsibility for his conduct and what the consequences of such a determination will be. Thus, when adjudicated not responsible by reason of mental disease or defect, a defendant is subject to mandatory commitment procedures to ascertain whether he is and will continue to be a threat to himself or others because of that mental disease or defect and, if so, criminal or civil commitment may ensue (see, People v Lancaster, supra, at 28-29; see, CPL 330.10, 330.20). Since the Grand Jury is not accorded the latitude of electing not to indict an accused based upon the potential assertion of a defense of mental disease or defect, the outtakes are not critical or necessary to the presentation of the case to the Grand Jury as the prosecution has no duty either to charge the Grand Jury as to the potential defense of mental *965 disease or defect or to present evidence within their possession that would support such a defense.
The court further rejects the prosecution’s contention that the outtakes are necessary to prove the mens rea element of murder, i.e., that Caputo possessed the requisite intent to cause death. This is not a case where proof of the act falls short of demonstrating that the perpetrator acted with a particular state of mind. Here, intent may be easily inferred from the commission of the act itself, i.e., strangulation of victim with a stocking and head injuries (cf., People v Alvino, 71 NY2d 233, 242 [discusses when evidence of prior criminal acts is not necessary to prove intent]). The applicable test is not merely that the unpublished statements be helpful or probative, but whether or not the prosecution of the action may be presented without it (see, Doe v Cummings, 22 Media L Rep [BNA] 1510, 1511 [Sup Ct, Lawrence County, Rogers, J., decided Jan. 18, 1994]).
Lastly, the prosecution maintains that the outtakes are critical for the purpose of corroborating Caputo’s admission that he killed Judith Becker as there is no direct evidence connecting Caputo to the crime.
CPL 60.50 provides that a person may not be convicted of an offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed.
The effect of the confession corroboration statute is to require proof of the corpus delicti (People v Reade, 13 NY2d 42, 45). "Generally, proof of the corpus delicti requires a showing: (1) that a loss has occurred (i.e., in a homicide, a deceased person) and (2) that the loss resulted from somebody’s criminality (People v Bennett, 49 NY 137, 143; 3 Wigmore, Evidence [3d ed], § 2072)”. (People v Murray, 40 NY2d 327, 331.) CPL 60.50 requires additional proof of the crime, aside from the defendant’s confession or admission, to obviate the "danger that a crime may be confessed when no such crime in any degree has been committed by any one” (People v Lytton, 257 NY 310, 314; see, People v Daniels, 37 NY2d 624, 629). Additional proof of the crime is sufficient when the body of the victim, as here, contains unmistakable signs that death was caused by criminal agency (People v Eisenman, 39 NY2d 810; People v Murray, 40 NY2d 327, supra; see also, 1 CJI[NY] 7.55, at 349-350). Under CPL 60.50 no additional proof need connect the defendant with the crime (People v Lipsky, 57 *966 NY2d 560, 571; cf, CPL 60.22 [accomplice corroboration rule requires evidence tending to connect the defendant with the commission of such offense]). Thus, the statute is satisfied "by the production of some proof, of whatever weight, that a crime was committed by someone” (People v Daniels, 37 NY2d 624, 629, supra). This is not a homicide case where the cause of death is as consistent with an accident or suicide as it is with criminal agency. Here, the body of Judith Becker bore evidence of the use of violence. Furthermore, the prosecution also has additional proof of motive and conduct indicative of a consciousness of guilt (see also, People v Lipsky, 57 NY2d 560, supra). While the outtakes may furnish additional evidence connecting defendant with the crime, which would be helpful to establish defendant’s guilt beyond a reasonable doubt, it is not necessary or critical to establishing a prima facie case.
Since the People have not demonstrated that the requested outtakes are key to their burden of proof at the proceedings before the Grand Jury (CPL 190.65 [1]) and all three prongs of the statutory test must be satisfied before disclosure can be ordered (Civil Rights Law § 79-h [c]), the motion to quash the subpeonas duces tecum is granted. In so deciding, the court declines to issue an advisory opinion as to whether the outtakes are critical and necessary to the Caputo prosecution at the trial stage, as the subject subpoenas call for production of the outtakes for a Grand Jury proceeding. Such an issue is best reserved for the Trial Judge (People v Korkala, 99 AD2d 161, 168, supra).