OPINION OF THE COURT
Jeffrey M. Atlas, J.
American Broadcasting Companies, Inc. (ABC) moves to quash a subpoena served upon it by Steven Crea which demands the production of any and all documents, notes, memoranda, correspondence, transcripts, summaries, audiotapes, videotapes, film or computer files in ABC’s custody or control, in whatever form recorded, that relate to or concern Sean Richard. The demand includes but is not limited to any materials that memorialize, relate to or concern any statements made by Sean Richard to ABC whether or not ABC News has used or intends to use such statements in a published news story. For the reasons which follow, the motion to quash is granted.
Steven Crea is the lead defendant among a total of 49 defendants charged by indictment with enterprise corruption, bribery, coercion, and grand larceny, for their alleged involvement in criminal schemes related to the construction industry. The indictment alleges that Steven Crea is the leader of the so-called “Lucchese Crime Family.” It also alleges the existence of the “Lucchese Construction Panel,” which has been described as a group that met weekly to plan and assess the status of various criminal ventures on construction sites. It is claimed that this construction panel was made up of Crea, codefendants Dominick Trucello and Joseph Datello, and a former associate of the Lucchese Crime Family, now an informant for the People, Sean Richard. It was the People’s intention that Richard would remain a confidential informant until this case was in a trial posture, and in the earliest stages of this litigation I signed protective orders to keep his identity secret. However, since the defendants’ arrests, Richard has given interviews to at least two news organizations, the New York Times and ABC News. In these interviews Richard apparently discussed the allegations in the indictment, and his and others’ participation in this criminal enterprise. A minuscule portion of a seven-hour videotape made by ABC with Richard was first aired on the day of the arrests in this case. Some months later ABC aired a few minutes of the interview. Crea’s subpoena seeks disclosure of the unaired balance of the interview.
While ABC moves to quash the subpoena on several grounds, the most significant claim is that the demanded material is *807 protected from disclosure by Civil Rights Law § 79-h, also known as New York’s Shield Law, which defines the parameters of professional journalists’ privilege against the disclosure of confidential and nonconfidential news.
The Shield Law provides professional journalists with absolute protection from contempt citations for refusing to disclose the source of confidential news, and qualified protection for refusing to disclose nonconfidential news. It is patently clear that the Richard interview, which ABC aired in part and which they undoubtedly plan to air more extensively in the future, is nonconfidential news. Therefore, Crea bears the burden of satisfying the demand of a three-prong test articulated in the statute before disclosure is required. Nonconfidential news is protected “unless the party seeking such news has made a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party’s claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source.” (Civil Rights Law § 79-h [c].)
To begin with, there seems to be no doubt that the Richard interview is relevant to the indictment to be tried. Indeed, it is virtually conceded that the interview with Richard covered, in considerable detail, his claimed relationship to the Lucchese Crime Family’s corruption of the construction industry and the activities of the defendant Crea and others in that alleged criminal enterprise.
The more troubling issue exists with respect to whether or not the material sought is critical or necessary to the maintenance of Crea’s “claim, defense or proof of an issue material thereto.” (Civil Rights Law § 79-h [c] [ii].) The defendant argues that this video is critical and necessary to the defense because it will help with the preparation of this mammoth case, it will demonstrate for the jury in the starkest terms Richard’s arrangement with the government and his hopes for movie and book deals, it will reveal Richard’s motives to lie, and it will provide invaluable impeachment material. Crea contends that in balancing the defendant’s need for the material against potential harm to ABC caused by the disclosure of this material, the defendant’s need for this material should prevail. ABC argues that by virtue of the New York Times article and the portions of the Richard interview that have already been aired, the defendant already has the evidence he seeks, and that his speculative claims do not demonstrate that the unaired portions of the interview are necessary to the maintenance of his claim, defense or proof of a material issue.
*808 As I have had occasion to note before, Civil Rights Law § 79-h (c) established the qualified privilege as to nonconfidential news by requiring disclosure of nonconfidential material only as a last resort (Matter of Grand Jury Subpoenas [National Broadcasting Co.], 178 Misc 2d 1052 [Sup Ct, NY County 1998]). “The law thus struck a balance between the urgent requirements of litigants in both civil and criminal courts, and the countervailing need to prevent the ‘undue diversion of journalistic effort and disruption of press functions’, to maintain the ‘tradition in this State of providing the broadest possible protection to [secure] “the sensitive role of gathering and disseminating news of public events” ’ and to assure ‘particular vigilance by the courts of this State in safeguarding the free press against undue interference.’” (Id., at 1055, quoting O’Neill v Oakgrove Constr., 71 NY2d 521, 528-529 [1988] [emphasis added].) Thus, the provision of the Civil Rights Law at issue is not satisfied absent clear and specific proof “that the claim for which the information is to be used ‘virtually rises or falls with the admission or exclusion of the proffered evidence.’ ” (In re Application to Quash Subpoena to Natl. Broadcasting Co., 79 F3d 346, 351 [2d Cir 1996] [citation omitted].) “The test is not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it.” (Id. [internal quotations omitted], quoting Doe v Cummings, 1994 WL 31560, *1 [Sup Ct, St. Lawrence County, Jan. 18, 1994]; see also, Flynn v NYP Holdings, 235 AD2d 907 [3d Dept 1997]; Matter of Grand Jury Subpoenas [Maguire], 161 Misc 2d 960, 965 [Westchester County Ct 1994].) Thus, it follows that when the Legislature speaks of unpublished news being critical or necessary to the proof of a claim or defense, it does not have in mind general and ordinary impeachment material or matters which might arguably bear on the assessment of credibility of witnesses. To permit that might well result in the piercing of the privilege far more often and with far less basis than the legislative history suggests is appropriate. Rather, the privilege may yield only when the party seeking the material can define the specific issue, other than general credibility, as to which the sought-after interview provides truly necessary proof (see, United States v Burke, 700 F2d 70 [2d Cir 1983]; cf. United States v Cutler, 6 F3d 67, 73 [2d Cir 1993] [“the evidence that Cutler seeks from the Reporters and the TV Stations is probably the only significant proof regarding his assertedly criminal behavior”]).
Thus, given the very heavy burden established by statute and case law, I do not believe that Crea has demonstrated that *809 the subpoenaed material is critical or necessary to the maintenance of his defense or the proof of any material issue. Indeed, the defendant has not actually defined for me any specific claim or defense which he affirmatively seeks to prove and he even concedes that he can proceed to trial without the subpoenaed material. In fact, Crea’s argument really focuses on the need to impeach the credibility of Richard and seeks the unaired interview in the hope that it will reveal some things that might prove valuable during cross-examination of Richard. In that way, Crea’s arguments are conjectural at best and do not provide a reason why the unaired interviews would provide proof of a specifically delineated defense or claim. (People v Gissendanner, 48 NY2d 543 [1979]; People v Magliore, 178 Misc 2d 489 [1998]; People v Soto, 162 Misc 2d 108 [1994]; People v Troiano, 127 Misc 2d 738 [1985]; People v Bova, 118 Misc 2d 14 [1983].)