OPINION OF THE COURT
Robert J. Collini, J.
Upon consideration of the People’s motion (CPLR 2214 [d]), dated March 5, 2009, to compel compliance with a subpoena duces tecum issued by the District Attorney of Richmond County (CPL 610.20 [2]) to NBC News, and the response of NBC Universal (hereinafter respondent), dated March 10, 2009, and oral argument by the parties on March 11, 2009 and March 13, 2009, it is decided as follows:
The defendant, who is awaiting trial on a count of murder in the second degree (Penal Law § 125.25 [1]) and related charges,[1] and her attorney elected to both submit to televised interviews with the respondent. During the interviews, portions of which were broadcast on the NBC Today Show in a four-minute segment on September 18, 2008, the defendant recited her version of highly relevant facts in this case, including her discovery of the deceased.
The People contend that certain televised statements of the defendant are inconsistent with statements she made to police and Emergency Medical Service (EMS) personnel on December 2, 2007.[2] Moreover, based on the respondent’s promotion of the segment (entitled “Did fat jokes drive wife to murder?”), the People assert that although not aired, statements relating to motive may have been discussed in the unaired portions of the interview, as well as possible inconsistent statements.
In 1990, the Legislature enacted Civil Rights Law § 79-h (Shield Law) to codify the three-prong test set forth in O’Neill v Oakgrove Constr. (71 NY2d 521, 527 [1988]), which is applicable to both civil and criminal proceedings, to determine whether nonconfidential material possessed by a news organization should be disclosed. Under the test, the party seeking disclosure must make a “clear and specific showing that the [information]: (i) is highly material and relevant; (ii) is critical or necessary to *368 the maintenance of a party’s claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source.” (People v Combest, 4 NY3d 341, 346 [2005].)
Through its written submission, the respondent concedes the first and third prongs, but not the second, asserting that the People have not made a “clear and specific showing that the Outtakes contain information that is critical or necessary to the prosecution of the case” (respondent’s mem at 5). During oral argument on March 11, 2009, however, the respondent further conceded that evidence of motive — as opposed to allegedly inconsistent statements by the defendant — would be critical in the instant case.
To support its argument as to the allegedly inconsistent statements made by the defendant (i.e., when the defendant’s statements to police and EMS officials are compared to those she made to NBC journalists), the respondent avers that inconsistent statements are of evidentiary value merely for impeachment purposes relative to credibility, and then only should the defendant chose to testify in the instant case, citing Matter of American Broadcasting Cos. (189 Misc 2d 805 [Sup Ct, NY County 2001]).
What distinguishes the instant case from Matter of American Broadcasting Cos. — which pertains to statements made to a news organization by a key witness in an enterprise corruption case, but not the defendant — is that, unlike a potential witness, a defendant’s statement in a criminal case is always relevant. Possible prohibitions to actual admissibility at trial, which are not germane to this motion, would require a separate determination by the court.
By virtue of its written submission, the respondent asserts that because the defendant “denied” in the broadcast that she committed the crime charged, the analysis must stop there (respondent’s mem at 10 n 1); however, it does not, as the defendant’s statements, although not constituting a “confession” (Prince, Richardson on Evidence § 8-204 [Farrell 11th ed]), may very well amount to an admission under the law.
Prince, Richardson on Evidence § 8-203 reads:
“An admission must appear to be against the interest of the party at the time of trial, but need not be against interest at the time it was made. While an admission may be a declaration against interest, it is not necessarily so, for at the time it was made it may have been favorable to the declarant’s interest. *369 The disserving nature of the statement, when made, undoubtedly adds to its probative value, Mindlin v Dorfman, 197 AD 770, 189 NYS 265, but does not bear upon its admissibility.” (Emphasis added.)
Here, particularly in a circumstantial case, evidence of both the defendant’s allegedly inconsistent statements and motive is highly probative. “Any act or declaration of the accused inconsistent with his innocence is admissible as an admission” (People v Harris, 148 AD2d 469, 469 [2d Dept 1989]; see also CJI2d[NY] Motive When Not an Element of Charged Crime [“if you find from the evidence that the defendant had a motive to commit the crime charged, that is a circumstance you may wish to consider as tending to support a finding of guilt”]).
Initially, in its papers, the respondent argued that the People lack specificity as to what, if anything, may have been stated by the defendant (or her attorney) in the footage that was not broadcast. During oral argument, however, the respondent agreed to submit the entire footage of both interviews to the court for an in camera inspection to aid in its decision.
The court is most cognizant of the respondent’s concerns, and weighs heavily the competing interests involved in a murder case that appears to be wholly circumstantial in nature. Clearly, the statutory intent of the Shield Law, as aptly noted by the respondent, is to protect journalists from unnecessary and coercive legal processes, or from otherwise impeding their newsgathering and reporting pursuits. (O’Neill v Oakgrove Constr, 71 NY2d 521, 527 [1988].)
One of the salient differences in People v Santiago[3] (NYLJ, Nov. 2, 2007, at 28, col 3, 2007 NY Misc LEXIS 7757 [Sup Ct, Kings County 2007]), which the respondent cites in its papers, is that unlike the instant case, the People in Santiago sought to compel actual testimony from a journalist about an interview he conducted. The Shield Law is quite specific that when the three-prong test is met, only “such portion, or portions, of the news sought as to which the above-described showing has been made [shall be disclosed] and [the Court] shall support such order with clear and specific findings made after a hearing” (Civil Rights Law § 79-h [c]).
While the issue of whether the Shield Law permits the compelled testimony of a journalist under certain circumstances is not before this court, nevertheless, the court recognizes that *370 there is a stark divergence between the compelled production of nonconfidential “material” (e.g., video footage) and a journalist having to ultimately testify about the details of his newsgathering efforts.
In any event, the ultimate purpose of the People’s subpoena in Santiago was to use the reporter’s testimony to support their case that admissions made by the defendant to the police were voluntary. Further, there was a known “non-reporter/non-police” witness to the reporter’s interview with whom the prosecutor spoke who could testify. Neither was the interview recorded.
As to another case cited by the respondent, People v Ford (NYLJ, Jan. 8, 2007, at 24, col 3, 2007 NY Misc LEXIS 55 [Crim Ct, Richmond County 2007]), it involved video outtakes in a misdemeanor prosecution. The difference between Ford and the instant case of premeditated murder, based solely on circumstantial evidence, requires no elaboration.
Notwithstanding the respondent’s position, Matter of National Broadcasting Co. v People (238 AD2d 618 [2d Dept 1997]) and Matter of Magrino (226 AD2d 218 [1st Dept 1996]) are most relevant to the instant case. In Magrino (at 218), the First Department held:
“The unused outtakes of the interview should be produced as well. Given that the broadcast version of the tape itself contains material evidence for the criminal prosecution, a factual predicate for concluding that it is likely that the outtakes will contain material information about the shooting has been provided . . . and any additional excerpts regarding the shooting that are found in the outtakes are ‘necessary’ . . . since they are the most detailed accounts of the incident ever made by the defendant himself.” (Citations omitted.)
The foregoing mirrors the instant case both factually and legally, and thus, the court finds that all three prongs of the test under the Shield Law have been satisfied.
It must be noted that this matter has been set for a firm trial date of March 30, 2009.
Having reviewed, in camera,[4] the entire footage (and transcripts) of the interviews of both the defendant and her at *371 torney to determine “whether any portions of the subpoenaed material do not meet the three statutory criteria and therefore should be withheld from the prosecution” (Matter of National Broadcasting Co., 238 AD2d at 619), the court hereby renders its findings pursuant to Civil Rights Law § 79-h (c).
Interview of Gallucci
The interviews conducted by the respondent of Mario Gallucci, Esq. at his private office do not meet the foregoing criteria, and therefore the People’s motion to compel relative to the same is denied.
Jailhouse Interview of Defendant
The interviews conducted by the respondent of the defendant within the New York City Department of Correction facility meet all three of the statutory criteria, and the People’s motion to compel is granted, except as set forth below.
At page 11 of the first transcript (which pertains to tape 1) commences what may very well constitute evidence of motive, and it continues throughout the majority of the entire interviews (i.e., through and including tape 2 and tape 3).
Motive is not limited to any purported negative comments by the victim about the defendant’s weight. Contrary to the respondent’s position expressed in its letter, dated March 17, 2009 (at 2 [hereinafter letter]), the fact that the defendant claims that these comments occurred “at least eight months before the murder” — assuming that the defendant’s account is truthful — does not make it any less critical under the Shield Law. In any case dealing with alleged domestic violence, motive is highly critical and relevant, and cannot be viewed in a factual vacuum; this includes statements regarding the “Mercereaus’ Marital Problems” (letter at 2-3), which would constitute, inter alia, evidence of motive.
The respondent’s suggested alternative that “the tabloid reports make clear that the prosecution can obtain the information contained in those statements from family and friends of the Mercereaus” (letter at 2) is unavailing. First, there is no indication by any party that, in fact, such witnesses exist and would be able to testify to those facts. Second, and most crucial, is that under the facts of this case, this prosecution does rise or fall upon the defendant’s own statements.
*372 Further, there are numerous instances, which are inextricably-interwoven throughout the interview where the defendant (1) arguably makes materially inconsistent statements in the respondent’s interview when juxtaposed with the defendant’s statements to police and EMS; and (2) makes other fact statements that were not made to law enforcement, which are relevant, material and critical to this case. Under the circumstances of this case, those statements made by the defendant to the respondent are not obtainable from any other source.
In any event, the court concurs with the respondent’s position as to the redaction of most of those portions of the defendant’s interview enumerated under “Miscellaneous Statements” (letter at 4).
Thus, all portions of the defendant’s entire interview (i.e., all three tapes[5]) must be disclosed to the People, except for those portions: (1) prior to 01:15:13;02 (tr, tape 1, at 11); (2) after 02:18:21;23 (tr, tape 2, at 15) through 02:22:57;13 (tr, tape 2, at 18); (3) after 02:25:43;27 (tr, tape 2, at 19) through 02:27:34;19 (tr, tape 2, at 20); (4) consisting of all the interview on page one of the transcript of tape 3 is excluded through page two up to 03:04:03;15 (respondent must include 03:04:07;18 and 03:04:30;10); (5) after 03:04:30;10 (tr, tape 3, at 2) through 03:12:22;05 (tr, tape 3, at 8); (6) after 03:13:09;23 (tr, tape 3, at 8) through 03:14:06;24 (tr, tape 3, at 9); and (7) after 03:18:27;11 (tr, tape 3, at 10) through 03:20:07;05 (tr, tape 3, at 11).
Finally, the court is sensitive to the respondent’s concerns that any disclosure of this material, which is its work product, should be facilitated only through the most restrictive manner. Therefore, any party to which this material is disclosed (i.e., either the People or the defense) by order of this court, shall be prohibited from disseminating or revealing any portion thereof to any other entity, forum or person.
Accordingly, it is hereby ordered that the respondent comply with the subpoena issued by the District Attorney of Richmond County to the foregoing extent by providing copies of the audio/ video recorded media (DVDs) and transcripts to the People by March 20, 2009, and it is further ordered that the respondent shall provide the court with the edited copies of all media and transcripts, and it is further ordered that the People shall not disseminate or otherwise disclose, in any manner, the contents of the materials provided by the respondent to any other entity, *373 forum or person without a written order of this court, except that the People may review these materials with law enforcement witnesses in preparation for trial, and it is further ordered that should the defendant and her counsel move under article 240 of the Criminal Procedure Law for disclosure of the foregoing material from the People, it must do so in writing and the People may only disclose said material by written order of this court.

. The People allege that the defendant committed the premeditated murder of her husband — a supervising fire marshal with the Fire Department of the City of New York- — by using his own service pistol to shoot him in the head whilst he slept.

. Date when the deceased’s body was discovered.

. Santiago was not an entirely circumstantial case.

. This includes certain submissions, oral and written (respondent’s letter, dated Mar. 17, 2009). To aid in its in camera determination, the court informed both parties on the record on March 11, 2009, that it would confer ex parte *371 with the respondent on what content, if any, should be disclosed; i.e., which particular portions of the interview, if any, comport with the three prongs of the Shield Law for disclosure. In any event, the People consented on the record to these ex parte communications.

. Refers to DVDs or other recorded media.