(July 5, 2016)

**THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NASEAN BONIE, Defendant. DINA SFORZA, a Representative of NEWS 12 THE BRONX, L.L.C., Nonparty Appellant.** [35 NYS3d 53]—

Order, Supreme Court, Bronx County (Ralph Fabrizio, J.), entered December 7, 2015, as corrected on or about December 23, 2015, which granted the People's motion to compel nonparty Dina Sforza, a representative of News 12 the Bronx, L.L.C. (News 12), to comply with a subpoena, to the extent of directing an in camera review of unpublished video footage of the News 12 reporter's interview of defendant, and denied News 12's cross motion to, inter alia, quash the subpoena, unanimously modified, on the law and the facts, to the extent of directing the trial judge to disclose to the People after in camera review only those portions of the video footage in which defendant makes any statement concerning killing the victim, or discusses their relationship and his impressions and observations of her, including her conduct as a tenant, and otherwise affirmed, without costs.

Ramona Moore was last seen on July 31, 2012, when she vanished from her residence in the Bronx, which she rented from defendant. In June 2014, defendant was indicted for Ms. Moore's murder, although her body had not been discovered. The People's case consists almost entirely of circumstantial evidence, including witness testimony, allegations that defendant had asked Ms. Moore to submit false paperwork to apply for rent subsidies, and a statement made by defendant to the police, in or about August 2012, in which he said that he had argued with Ms. Moore about unpaid rent, and made derogatory comments about her lifestyle.

On December 15, 2014, News 12 reporter Ray Raimundi conducted and videotaped an interview of defendant at the Manhattan Detention Complex. On January 20, 2015, News 12 broadcast a five minute segment about defendant titled "Burden of Proof," including approximately one minute of Raimundi's 30 minute interview with him. In the broadcast portion of the interview, defendant denies killing Ms. Moore, and states that he "didn't have any personal issues with her" and "[n]ever had any kind of quarrel" with her. Raimundi states in the broadcast that defendant described Ms. Moore as a "good tenant, and a good person who always paid her rent on time and was friendly with fellow neighbors."

In April 2015, utility workers discovered human remains in Orange County, New York. Medical tests confirmed that the remains were those of Ms. Moore.

On or about September 9, 2015, the People served a so-ordered subpoena on News 12 seeking production of the aired and unaired jailhouse interview footage. News 12 responded by providing a copy of the broadcast from January 20, 2015, but declined to produce the unaired footage, citing New York's Shield Law (Civil Rights Law § 79-h [c]). On or about October 22, 2015, the People filed an order to show cause seeking an order directing News 12 to comply with the subpoena. In a supporting affirmation, an Assistant District Attorney stated, "upon information and belief," that the material sought was an interview of defendant "regarding the . . . pending indictment" against him, and was therefore not governed by the Shield Law because it was "highly material and relevant, is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and is not obtainable from any alternative source." News 12 cross-moved for, inter alia, an order quashing the subpoena. In opposition to the cross motion, the People argued, inter alia, that defendant's claim of innocence and his comments about his positive relationship with Ms. Moore and his lack of motive to kill her because she had paid her rent on time, made access to the tape critical and necessary to the prosecution. The People also advised the court that they had learned from the Department of Correction (DOC) that two DOC staff members were present during News 12's interview of defendant, but DOC was unable to determine the identity of the correction officers present, and DOC press liaison staff present that day no longer worked for DOC and had relocated without providing DOC with contact information. In reply, News 12 noted that they had located the LinkedIn account and employer's website of a person they

believed to be the former DOC press liaison staff. Defendant took no position on the motion and cross motion, and has not taken a position on this appeal.

In 1988, the Court of Appeals held that article I, section 8 of the New York State Constitution, which was adopted prior to the Supreme Court's application of the First Amendment of the US Constitution to the states, and is more expansive, provides a qualified privilege with regard to nonconfidential journalistic material[1] to prevent undue "diversion of journalistic effort and disruption of newsgathering activity" (*O'Neill v Oakgrove Constr.*, 71 NY2d 521, 527 [1988]).[2] In 1990, the New York State Legislature enacted subdivision (c) of the Shield Law, which codified the three-pronged test enunciated in *O'Neill*. Under that provision, a journalist's nonconfidential material is privileged unless the litigant seeking its disclosure makes a "clear and specific showing" that it "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source" (Civil Rights Law § 79-h [c]). The statute further provides that "[a] court shall order disclosure only of such portion, or portions, of the news sought as to which the above-described showing has been made and shall support such order with clear and specific findings made after a hearing" (*id.*). The Court of Appeals has since noted in dicta that "there are uncertainties concerning the application of the outer reaches of [New York's Shield Law], particularly the scope of the qualified privilege for nonconfidential news which must be determined on a case-by-case basis" (*Matter of Holmes v Winter*, 22 NY3d 300, 316 [2013], cert denied 572 US —, 134 S Ct 2664 [2014], citing *People v Combest*, 4 NY3d 341 [2005]).

Here, the outtakes of an interview of defendant taken at a detention center in which he discusses, inter alia, the charges against him and his relationship with the victim, are on their face "highly material and relevant" (Civil Rights Law § 79-h [c]). In a circumstantial murder case, evidence which, standing alone, might appear innocuous can be deemed critical when viewed in combination with other circumstantial evidence (*see*

---

**1.** Then, as now, the Shield Law provided an absolute privilege with regard to confidential journalistic material (Civil Rights Law § 79-h [b]).

**2.** The majority in *O'Neill* also agreed with those federal jurisdictions that have held that the qualified privilege for nonconfidential journalistic material is required by the First Amendment to the US Constitution, while noting that the US Supreme Court had not yet recognized such a privilege (71 NY2d at 528). Justice Kaye dissented on this point, stating that the Court should base its decision only on the New York State Constitution to avoid the uncertainty in federal law on this issue (*id.* at 531).

*People v Mercereau*, 24 Misc 3d 366, 369 [Sup Ct, Richmond County 2009]). Here, the reporter described on air statements made by defendant in unaired portions of the interview to the effect that Ms. Moore was a good tenant and a good person who always paid her rent on time and was friendly with fellow neighbors. While these statements out of context might seem benign, the People argue persuasively that they are "critical or necessary" to the People's effort to prove motive, intent, and consciousness of guilt, since they contradict defendant's earlier statements to police (*see id.* at 368-369, citing Jerome Prince, Richardson on Evidence § 8-203 [Farrell 11th ed 1995]). Although the People have access to the substance of what defendant said from Raimundi's paraphrase on the News 12 broadcast, defendant's actual words and his demeanor as he said them are available only on the unpublished video of the interview in News 12's possession. Similarly, even if the People had located and contacted the DOC's employees who were present during the interview, their recollections, if any, of defendant's statements do not have the same evidentiary effect as would the video recording. Accordingly, defendant's unaired statements about Ms. Moore are not obtainable from an alternative source (*compare Matter of Gilson v Coburn*, 106 AD3d 424 [1st Dept 2013], *lv denied* 21 NY3d 863 [2013]). Therefore, we find that the People have made the "clear and specific showing" required to overcome News 12's qualified privilege as to nonconfidential journalistic material under article I, section 8 of New York's Constitution and the Shield Law only as to those portions of the unaired News 12 footage of its interview with defendant in which defendant makes any statement concerning killing Ms. Moore, and discusses their relationship and his impressions and observations of her, including her conduct as a tenant (Civil Rights Law § 79-h [c]; *see also People v Combest*, 4 NY3d 341, 345-346 [2005]). To the extent that the order appealed from holds that the People have sustained their burden as to other portions of the unaired video, we disagree. The motion court's reliance on our decision in *Matter of Magrino* (226 AD2d 218 [1st Dept 1996]) was misplaced, since that case related to enforcement of a subpoena compelling production of unpublished video footage for use in a criminal proceeding in another state, pursuant to the interstate subpoena statute (CPL 640.10), and specifically held that the attempt to assert qualified privilege under the Shield Law lacked merit (Civil Rights Law § 79-h). We therefore do not credit the portion of *People v Mercereau* that incorrectly relies on *Magrino* (*see* 24 Misc 3d at 370).

In addition, we clarify that the trial judge need not issue

further findings but need only disclose the portions of the footage delineated above. Concur—Sweeny, J.P., Acosta, Manzanet-Daniels, Gische and Gesmer, JJ.